**IN RE CLARK**

[202 N.C. App. 151 (2010)]

IN THE MATTER OF JANET CLARK

No. COA08-1043

(Filed 2 February 2010)

**1. Costs— attorney fees—incompetent adult—restoration of competency**

The trial court had the statutory authority to award attorney fees from an incompetent adult's estate under N.C.G.S. § 35A-1202(10), which gave the guardian of the person the right to employ legal assistance for the benefit of the ward. N.C.G.S. § 35A-116(a) does not represent the only statutory provision under which the court had authority to approve payment of attorney fees.

**2. Costs— attorney fees—incompetent adult—opposition to restoration of competency**

The trial court did not abuse its discretion by approving payment of attorney fees from an incompetent adult's estate to law firms which unsuccessfully opposed the restoration of competency to the ward. There were a number of factors, taken together, which justified the guardian's concern that restoration of competency and the removal of herself as guardian might not be in the ward's best interest.

**3. Costs— attorney fees—establishment of trust—preservation of assets**

The trial court did not abuse its discretion by awarding attorney fees from a ward's estate where the attorneys were retained to assist in the establishment of a special needs trust and the preservation of assets and where the ward was in the process of receiving a large personal injury settlement. Compensation for a service provider acting on behalf of a ward is not contingent upon the ward's approval.

**4. Costs— witness fees—restoration of competency to adult—representatives of trustee**

The trial court did not err in an action in which an adult's competency was restored by requiring payment of witness fees from a ward's estate to representatives of the trustee where the witnesses were subpoenaed by the ward's attorney before competency was restored but competency had been restored by the time the subpoenas were issued.

**IN RE CLARK**

[202 N.C. App. 151 (2010)]

### 5. Guardian and Ward— restoration of competency—evidentiary support

There was either evidentiary support for challenged findings in an action to restore an adult's competency, or the findings did not involve prejudicial error.

### 6. Attorneys— counsel for guardian of ward—no ethical violations

The trial court did not err in its ruling that the legal counsel for the guardian of an adult ward did not commit ethical violations and was not subject to sanctions. Although the formation of the retainer agreement was questioned, the guardian of the person is clearly authorized to retain legal counsel and the fact that the guardian of the estate did not sign the agreement is beside the point. The findings that the counsel had exercised his best judgment on behalf of the client were amply supported by the record, and there was no error in the findings and conclusions that there was no conflict of interest in the counsel's relationship with the Corporation of Guardianship. There was ample support for findings to the effect that the relationship between counsel and the Corporation of Guardianship was fully disclosed and there was no demonstration that the relationship adversely affected his representation of his client.

### 7. Appeal and Error— attorney fees as sanction—denied—appeal not frivolous

A motion for remand of an award of attorney fees as a sanction for a frivolous appeal was denied, even though all of appellants' arguments were rejected in the appeal, where the arguments were not so totally without merit that they could be branded completely frivolous. Additionally, there was no evidence that the appeal was taken for an improper purpose.

### 8. Appeal and Error— attorney fees—restoration of competency—original jurisdiction—clerk of superior court

Motions for attorney fees made on appeal in an action to restore competency were dismissed without prejudice to petitioner's right to submit a request for such fees to the clerk of superior court, who has original jurisdiction over matters involving management by a guardian of her ward's estate.

Appeal by former ward and petitioner for restoration of former ward's competency from order entered 27 February 2008 by Judge

**IN RE CLARK**

[202 N.C. App. 151 (2010)]

Paul C. Ridgeway in Harnett County Superior Court. Heard in the Court of Appeals 8 April 2009.

*McLeod & Harrop, by Donald E. Harrop, Jr.; Jones & Jones, P.L.L.C. by Cecil B. Jones, for appellants.*

*Wyrick, Robbins, Yates, & Ponton, LLP by, K. Edward Greene; Tobias S. Hampson, for appellee Booth, Harrington, & Johns, LLP.*

*Bain, Buzzard & McRae, LLP by Robert A. Buzzard, for appellee Gail Zawacki.*

ERVIN, Judge.

## I. Factual Background

On 11 May 2005, Janet Clark (Ms. Clark) was involved in a serious motor vehicle accident. Ms. Clark sustained a broken knee and a traumatic brain injury, remained comatose for two and a half weeks, spent two months as an inpatient at WakeMed Hospital, and required months of additional rehabilitation. Prior to her injury, Ms. Clark had a history of substance abuse and mental health problems.

On 3 June 2005, Ms. Clark's husband, Roger Clark (Mr. Clark), petitioned to have his wife adjudicated incompetent and to have himself appointed as her general guardian. On 24 June 2005, Ms. Clark was adjudicated incompetent. Four days later, Mr. Clark was appointed Ms. Clark's general guardian. On 26 October 2005, Mr. Clark resigned as guardian of Ms. Clark's estate, claiming that his own disability made it difficult for him to competently oversee Ms. Clark's assets. On 10 November 2005, the Clerk of Superior Court of Harnett County appointed William M. Pope as guardian of Ms. Clark's estate in lieu of Mr. Clark.

Mr. Clark continued to serve as guardian of Ms. Clark's person until he resigned on 9 January 2006, once again attributing his resignation to his disability. On 19 January 2006, the court relieved Mr. Clark of his fiduciary responsibilities and appointed Ms. Clark's sister, Gail Zawacki (Ms. Zawacki), to serve in his stead. Prior to being officially appointed as guardian of Ms. Clark's person, Ms. Zawacki retained A. Frank Johns (Mr. Johns) of Booth, Harrington & Johns, LLP (Booth Harrington)[1] to represent Ms. Clark in connection with

---

1. Booth, Harrington & Johns, LLP became Booth, Harrington & Johns of NC, PLLC during the pendency of this litigation.

IN RE CLARK

[202 N.C. App. 151 (2010)]

certain guardianship and trust-related issues that were expected to arise in connection with anticipated litigation. According to the 4 January 2006 retainer agreement executed by Booth Harrington and Ms. Zawacki, Booth Harrington's representation of Ms. Clark was to consist of five phases, and a sixth, optional, phase:

I. PHASE 1 APPEARANCE AND RECOGNITION OF ATTORNEY OF RECORD IN GUARDIANSHIP PROCEEDINGS[]

. . . .

II. PHASE 2—COURT APPEARANCE AND RECOGNITION OF ATTORNEY OF RECORD[]

. . . .

III. PHASE 3—PROVIDE EXPERTISE AND GUIDANCE IN THE COURT ORDERED MEDIATION RELATING TO THE IMPACT OF BENEFITS

. . . .

IV. PHASE 4—LIFE PLANNING AND STRUCTURE AND LUMP-SUM DEVELOPMENT OF ALL PRODUCTS AND SERVICES THAT WILL FUND THE [SPECIAL NEEDS TRUST (SNT)][]

. . . .

V. PHASE 5—CREATE, DEVELOP AND FUND [AN SNT][]

. . . .

VI. PHASE 6—SNT ADMINISTRATION (OPTIONAL)[]

. . . .

The compensation to be received by Booth Harrington under the retainer agreement was contingent upon the receipt of a recovery in a personal injury litigation that had been instituted on Ms. Clark's behalf against Tyco International (US) Inc.; Tyco Electronics Corporation; and Robert Bruce Gorman stemming from the 11 May 2005 accident (the Tyco litigation). The retainer agreement provided that Booth Harrington would be paid $7,500.00 for the work to be performed during Phase 1 and $11,500.00 for the work to be performed during each subsequent phase.

After undertaking to represent Ms. Clark, Mr. Johns petitioned to have Ms. Clark undergo "a comprehensive physical and cognitive assessment" and to receive rehabilitation. On 18 January 2006, the

**IN RE CLARK**

[202 N.C. App. 151 (2010)]

court entered an order allowing Ms. Clark to temporarily reside at the Florida Institute for Neurological Rehabilitation (FINR), which provides treatment for patients that have sustained traumatic brain injuries. During her stay at FINR, Ms. Clark raised numerous complaints, including allegations that female nursing staff had shoved their fists in her rectum, that she had been beaten, and that she had been served ant-covered food.

On 5 January 2007, Mr. Clark petitioned for restoration of Ms. Clark's competency or, alternatively, for Ms. Zawacki's removal as guardian of Ms. Clark's person.[2] On 12 January 2007, Mr. Johns filed a Motion to Dismiss; a Motion to Quash Subpoena directed at a subpoena issued for Ms. Zawacki at the request of counsel for Mr. Clark; and a Motion for Multidisciplinary Evaluation or, in the Alternative, a Rule 35 Mental Examination; and a Motion for Jury Trial.[3] On 19 January 2007, the Clerk of Superior Court appointed Christopher Carr to serve as Ms. Clark's guardian *ad litem* in the pending guardianship-related matters. On 22 January 2007, Mr. Johns filed a Motion to File Affidavits Under Seal; a Motion to Stay Disbursements; a Motion for Continuance; an Amended Motion for Multidisciplinary Evaluation, or, in the Alternative, a Rule 35 Mental Examination; an Amended Motion to Dismiss; and an Amended Motion for Jury Trial and Demand for Jury Trial.

On 22 January 2007, the Clerk of Superior Court entered an Order to File Affidavits Under Seal and an Order for Jury Trial. On 24 January 2007, the Clerk of Superior Court entered an Order for Multidisciplinary Evaluation and an Order for Continuance. On 1 February 2007, the Clerk of Superior Court entered an Order of Recusal, in which the Clerk's office recused itself from serving as a hearing officer in this matter.

On 2 February 2007, the Clerk of Superior Court entered an Order indicating the belief that Ms. Clark might be moved from her current placement and ordering that the Multidisciplinary Evaluation take place as scheduled. On 5 February 2007, Ms. Clark submitted a letter requesting that a hearing be held to consider the restoration of her competency, indicating that she would prefer that Mr. Clark serve as her guardian rather than Ms. Zawacki, and stating that Mr. Jones should be deemed her representative rather than Mr. Johns. On 5

---

2. Mr. Clark was represented by Cecil B. Jones.

3. At the time that these filings were made, Mr. Johns and Marylynn S. Jones, another attorney practicing with Booth Harrington, were representing Ms. Clark.

February 2007, the Clerk of Superior Court entered a Modification of Order Entered 02-02-07 allowing FINR to release Ms. Clark into Ms. Zawacki's custody so long as she was returned to Florida on 27 and 28 February 2007 for the Multidisciplinary Evaluation.

On 5 February 2007, Judge Richard T. Brown entered an Order Approving Final Settlement Between Plaintiff and Defendant in the Tyco litigation. The total settlement approved by Judge Brown amounted to $4,000,000.00. In approving the settlement of the Tyco litigation, Judge Brown found as a fact, among other things, that:

7.  Plaintiff engaged A. Frank Johns, Esq., and the firm of BOOTH HARRINGTON & JOHNS LLP and owes $74,653.35.

    a.  Plaintiff agreed to pay the firm of Booth Harrington & Johns LLP $7,500.00 **FOR THE FIRST ENUMERATED PHASE ADDRESSING GUARDIANSHIP ISSUES, and $11,500.00 FOR EACH OF FOUR OTHER ENUMERATED PHASES.** These fees were confirmed in a separate retainer agreement and shall be payable to Booth Harrington & Johns LLP as the contingent retainer and minimum fee owed by the Client to the Law Firm in connection with the Matter regardless of the outcome of the Matter or the amount of attorney time involved in bringing the Matter to its conclusion. Flat fees due to Booth Harrington & Johns LLP under the retainer agreement total $53,500.

    b.  Additionally, the firm of Booth Harrington & Johns, LLP has represented the interests of the Plaintiff in subsequent hearings in the guardianship forum. These matters are currently ongoing and require further representation. Total hourly rate fees for additional guardianship representation are currently outstanding in the amount of $21,153.35.

Among other things, the 5 February 2007 order provided that $729,667.00 was to be paid to Booth Harrington's trust account, with $74,653.35 to be paid to Booth Harrington for legal fees; various amounts to be paid to other creditors; and the balance to be paid to the trustee of an SNT to be established by Booth Harrington for Ms. Clark's benefit. The order approving the personal injury settlement made Mr. Johns and Booth Harrington responsible for creating the SNT and provided that the legal fee payment to Booth Harrington was intended to cover:

the phases of services to create the [SNT] for the benefit of [Ms. Clark]; to represent [Ms. Clark's] interests and those of the guardian of the person, [Ms.] Zawacki[,] in guardianship hearings and process; and to provide counsel to the trustee of the [SNT] for [SNT] administration and future Medicaid eligibility, to assure the proper purchase of annuity contracts, to assure that the pro-rating of lump sum distributions are correctly distributed to the trustee of the [SNT], and to assure that [the] initial distributions into the [SNT] and from it meet all tax, regulatory and fiduciary requirements necessary to sustain eligibility for governmental benefits, including Supplemental Security Income ("SSI"), Community Assistance Program ("CAP"), Social Security Disability Income ("SSDI"), Medicare and Medicaid during all stages of [Ms. Clark's] life.

According to a draft Irrevocable Special Needs Trust (d)(4)(C) Pooled Trust of Janet Clark attached to the 5 February 2007 order, the trustee of the SNT was to be the Corporation of Guardianship, a corporate entity for which Mr. Johns originally served as incorporator and on whose Board of Directors he continued to serve.[4] An additional $1,800,000.00 was "to be paid to an insurance company chosen by counsel for [Ms. Clark] for purchase of an annuity for the benefit of Ms. Clark."

On the day after Judge Brown entered the order approving the settlement of the Tyco litigation, Ms. Clark was released into the custody of Ms. Zawacki, who resided in New Jersey. On 12 February 2007, while riding in a car with Ms. Zawacki, Ms. Clark "began screaming and swearing at [her]." As a result of this incident, Ms. Clark was involuntarily committed to Hagedorn Psychiatric Hospital in New Jersey.

On 22 February 2007, Mr. Clark petitioned for Ms. Zawacki's immediate removal as guardian of Ms. Clark's person. In response, Ms. Zawacki retained Robert A. Buzzard of Bain, Buzzard & McRae (Bain Buzzard) to represent her in her fiduciary capacity. A guarantee of legal fees was executed by the Corporation of Guardianship on 9 March 2007. Booth Harrington advised the Corporation of Guardianship to execute this document.

On 23 February 2007, the Clerk of Superior Court entered an order requesting that a current multidisciplinary evaluation be per-

---

4. The documents actually creating the SNT were accepted by the Corporation of Guardianship on 7 February 2007 and signed by Judge Brown on 12 February 2007.

formed upon Ms. Clark in New Jersey. On 26 February 2007, Mr. Johns filed a Motion to Dismiss Petition. On 27 February 2007, Mr. Johns filed a Motion for Modification of MDE.[5] On 27 February 2007, the Clerk of Superior Court entered an Order providing that the multidisciplinary evaluation of Ms. Clark could be conducted in New Jersey rather than Florida. On 1 March 2007, Judge Brown declined a request to remove Booth Harrington as Ms. Clark's counsel. On 15 May 2007, Bain Buzzard filed an answer on behalf of Ms. Zawacki.

On 21 May 2007, this matter came on for hearing before Judge William C. Gore, Jr. On that date, Judge Gore entered an Order Disqualifying Attorney that was subsequently signed on 26 June 2007. In that order, Judge Gore recited that Booth Harrington opposed restoration of Ms. Clark's competency; that no representative of Booth Harrington "had contacted or communicated with [Ms. Clark] since the filing of the Petition of Restoration;" that Ms. Clark had indicated that she did not want Booth Harrington to represent her; and that Ms. Clark "wished to proceed on her own accord fully" and ordered that Mr. Johns and Ms. Jones be "disqualified and removed from representing [Ms. Clark] in this proceeding." All interested parties entered into settlement discussions and signed a Memorandum of Settlement which provided that its terms would "be reduced to a consent order within the next ninety days" and that the parties had agreed, in pertinent part, that:

1. The current [SNT] shall be replaced with a substitute irrevocable special needs trust to reflect a change in the trustee of the current special needs trust[.]

2. The modified and/or substituted trust referenced above . . . shall be funded by the annuity payments made pursuant to the terms of the personal injury settlement with [Ms.] Clark.

. . . .

4. All parties hereto [] agree to forever release, discharge and hold harmless [Ms.] Zawacki from any actions she has taken individually or as guardian of the person for [Ms.] Clark.

5. Until the aforementioned modified or substitute trust shall be set up and approved[,] [Ms.] Clark shall receive assistance

---

5. Although the Motion for Modification for MDE was filed on 27 February 2007, it was dated 22 February 2007 and appears to have precipitated the entry of the 23 February 2007 order changing the location at which the multidisciplinary evaluation could be conducted.

from the settlement funds from her personal injury matter currently held in the trust account of [Mr.] Johns, an amount equal to $8,000.00 per month which is hereby deemed a reasonable and appropriate reimbursement of her living expenses[.]

. . . .

7. It is hereby agreed that all parties hereto shall present to the court any unpaid reimbursements, expenses or fees on the same date of the presentment of the modified or substitute trust and that all reasonable fees shall be authorized by the court and distributed per the court order *after giving all parties an opportunity to be heard.*

8. *That an accounting of the monies paid to date from the [SNT] and payments made of monies held in trust by [Mr.] Johns or his firm shall be provided to the parties.*

Finally, in an Order for Restoration of Competency entered on 21 May 2007 and signed on 26 June 2007, Judge Gore ordered, after reciting that "the guardian of the person indicated through counsel that she would not be opposing restoration" and after making findings of fact based on observations made by the guardian *ad litem,* that Ms. Clark's rights "be fully restored and that she is competent to handle her personal and financial affairs."

On 23 May 2007, Mr. Johns transferred $319,572.01 from Booth Harrington's trust account to the Corporation of Guardianship, which deposited that amount in the SNT. Mr. Johns did not make the initial $16,000.00 payment to Ms. Clark or the subsequent $8,000.00 monthly payments called for in the Memorandum of Settlement out of a concern that, if he did so, he would be violating the 5 February 2007 order. On 1 June 2007, Mr. Johns filed a Report of Disbursements And Proof of Funding as Directed In Order Approving Final Settlement Between Plaintiffs and Defendants which accurately reflected the payments that he had, in fact, made.

On 29 June 2007, Mr. Clark filed a Motion for Payment of Attorney Fees and Assessment of Costs seeking reimbursement for attorney's fees and costs pursuant to N.C. Gen. Stat. § 35A-1116. On the same date, Ms. Clark filed a Motion in the Cause for Contempt or, in the Alternative, for Rule 60 Relief based on Mr. Johns' failure to make the payments required by the Memorandum of Settlement. On 26 September 2007, the trial court entered an Order Denying Plaintiff's Motion for Contempt in which it found that "[t]he Memorandum of

**IN RE CLARK**

[202 N.C. App. 151 (2010)]

Settlement" was "a recital of the parties' settlement agreement" and was "not enforceable through the contempt powers of the Court" since it had not been reduced to final form and incorporated into a consent order.

On 10 July 2007, Booth Harrington petitioned for an award of $55,984.08 in attorney's fees for its representation of Ms. Clark. On 13 August 2007 and 22 August 2007, respectively, counsel for Ms. Clark obtained the issuance of subpoenas directed to employees of the Corporation of Guardianship and to Mr. Johns. On 31 August 2007, Mr. Johns filed an Objection to Subpoena and Motion to Quash. In addition, the Corporation of Guardianship also objected to and moved to quash the subpoena directed to its employees. Ultimately, the dispute involving the information which counsel for Ms. Clark sought to obtain was resolved by means of an Order entered by Judge Franklin F. Lanier on 31 August 2007 and signed on 10 September 2007.

On 7 September 2007, Booth Harrington filed an amended petition requesting an additional $12,145.17 for time spent "defending motions and subpoenas served by [Mr.] Jones, attorney for Mr. [] Clark and Ms. [] Clark." On 10 September 2007, Bain Buzzard petitioned for approval of $28,135.00 in attorney's fees. On 13 September 2007, Mr. Clark filed an Amended Motion for Payment of Attorneys Fees and Assessment of Costs in which he sought, among other things, to have his own attorney's fees, which totaled $32,451.57, paid by Ms. Zawacki, Mr. Johns, or the guardianship estate and the fees awarded to the guardian *ad litem* be paid by Ms. Zawacki or Mr. Johns.

On 26 September 2007, the trial court entered an order in the Tyco litigation which modified the 5 February 2007 order by terminating the SNT. In the 24 September 2007 order, the trial court, in an attempt to modify and effectuate the Memorandum of Settlement, ordered that:

A. The Corporation of Guardianship, Inc. shall, within three days of the entry of this Order, issue a check in the amount of $64,000.00 to [Mr.] Jones, in trust for [Ms.] Clark and, except as specifically authorized herein or by further order of this Court, shall distribute no other funds from the [SNT];

B. [Mr.] Jones shall, upon receipt of the funds transferred pursuant to paragraph (A) above, immediately issue a check to

[Ms.] Clark for $40,000.00 and thereafter, for a period of three consecutive months, make monthly payments of $8,000.00 to [Ms.] Clark;

C. The Corporation of Guardianship, Inc., shall as soon thereafter as possible, but in no event beyond 15 days after the entry of this Order, file a final accounting of the [SNT] with this Court;

. . . .

E. The Corporation of Guardianship, Inc., shall thereafter wind down the administrative requirements for the operation of the trust, retaining sufficient funds on hand, in an amount allowed by the Court, to pay reasonable fees for professional services including the filing of tax returns in a timely manner in the normal course of trust [operation];

F. Within ten days after the [approval of the final accounting of the SNT], the Corporation of Guardianship, Inc., shall issue a net check representing the remaining funds held for the benefit of [Ms.] Clark in trust, to [Mr.] Jones, in trust;

G. Within 15 day[s] of the entry of this Order, [Mr.] Jones and Alton C. Bain shall present a proposed Janet Clark Irrevocable Discretionary Trust to this Court for approval, and at the same time present an institutional trustee to the Court for consideration of appointment as trustee of the Janet Clark Irrevocable Discretionary Trust;

The trial court ordered that the proceeds of the annuities purchased under the order approving the settlement of the Tyco litigation be paid into the Janet Clark Irrevocable Discretionary Trust as well.

On 19 September 2007, Booth Harrington filed a second amended petition seeking approval of an additional $11,950.00 in fees from the ward's estate. On 24 September 2007, the Corporation of Guardianship filed a letter requesting reimbursement for time and expenses relating to the attendance of Jerry Hollingsworth and Sonya Tomlinson at the 10 September 2007 hearing in response to a subpoena issued by counsel for the Clarks. On 10 December 2007, Mr. Clark filed a Second Amended Motion for Payment of Attorneys Fees and Assessment of Costs in which he sought, among other things, to have his own attorney's fees, which totaled $34,964.07, paid by Ms. Zawacki, Mr. Johns, or the guardianship estate and the fees

and expenses of the guardian *ad litem* paid by Ms. Zawacki or Mr. Johns. On 19 November 2007, Bain Buzzard filed a Motion seeking approval of $29,023.00 in attorney's fees relating to its representation of Ms. Zawacki.

The various fee-related motions came on for hearing before the trial court on 31 January 2008. The parties filed affidavits and various other items of information in anticipation of or during the 31 January 2008 hearing. On 27 February 2008, the trial court entered an Order Approving the Payment of Attorneys Fees and Expenses. In its order, the trial court found with respect to Mr. Clark's request for the imposition of sanctions against Mr. Johns that:

> e. During the period from January 4, 2007 to May 21, 2007, Ms. Clark was, as a matter of law, a client with diminished mental capacity, and as such, Mr. Johns' professional conduct during that period was specifically governed by Rule 1.14 of the North Carolina Rules of Professional Conduct.

> f. While it is clear that Ms. Clark, during this period of legal incompetency, expressed her desire that Mr. Johns be relieved of his duty to represent her, there is no evidence and indeed, evidence to the contrary, that the court appointed guardian of the person ever sought to have Mr. Johns removed from the case.

> g. Ms. Clark's desire to have Mr. Johns removed from the case was considered by the Court on March 1, 2007, and the Court declined to relieve Mr. Johns of his duties.

> h. Mr. Johns formed the opinion that [Mr.] Clark, Ms. Clark's husband, was attempting to exert influence over Ms. Clark during her period of incompetency with a view to gaining access to funds from Ms. Clark's settlement. Mr. Johns, in his professional opinion, and consistent therewith, concluded that securing the funds in a special needs pooled trust was the most appropriate method of ensuring that the funds would be protected and available for the future health and welfare needs of his client, Ms. Clark.

> i. After forming this opinion, . . . Mr. Johns vigorously and zealously challenged efforts by Mr. Clark to have Ms. Clark's competency restored, and successfully urged the court to order a multidisciplinary examination of Ms. Clark.

> j. Mr. Johns also vigorously and zealously opposed allowing the settlement funds to be used for any purpose other than funding the special needs pooled trust. Ultimately, on the eve of the hear-

ing to consider the restoration of Ms. Clark's competency, Mr. Johns agreed not to oppose the restoration provided that the funds would be placed in an irrevocable special needs trust with a suitable third party trustee[.]

. . . .

l. The Corporation of Guardianship, Inc., is a North Carolina non-profit corporation established in 1979. [Mr.] Johns led the effort to establish the Corporation [] Guardianship, Inc., and currently serves on its board of directors and as secretary and registered agent for the corporation. His law firm serves as legal counsel to the Corporation when legal services are needed[.]

m. Because Mr. Johns serves as an officer and on the board of the Corporation of Guardianship, Inc., and receives financial benefit from the Corporation in those instances when the Corporation hires Mr. John's law firm to act as counsel, the potential for a conflict of interest exists between Mr. Johns and clients utilizing the Corporation of Guardianship's services at his suggestion. However, Mr. Johns represented to the Court that he routinely informs clients of his relationship with the Corporation, and that he did so with respect to [Ms.] Clark. The Court has no evidence from [Ms.] Zawacki, who served as guardian of the person during the relevant time that the decision to use the Corporation and Mr. Johns' firm was being considered, that such a disclosure was not made. Moreover, the Court concludes that the potential conflict of interest in this instance was tenuous.

Based upon these findings of fact, the trial court concluded that "there was no evidence of any violation of Rules of Professional Conduct by [Mr.] Johns or [Booth Harrington], and as such, the [trial court found] no basis to impose the sanctions" sought by Mr. Clark.

In addition, the trial court found, "with respect to the petition of [t]he Corporation of Guardianship for reimbursement for time and expenses of [Mr.] Hollingsworth and [Ms.] Tomlinson," that "these witnesses are only entitled to reimbursement for mileage at $0.485 per mile plus a witness fee of $5.00 per day," rather than the $156.17 in travel expenses and $2,600.00 in hourly charges that they had originally claimed, since they were only entitled to the Uniform Witness Fees set out in N.C. Gen. Stat. § 7A-314.[6] As a result, the trial court

6. The trial court specifically found that the amounts originally requested by Mr. Hollingsworth and Ms. Tomlinson were not "unreasonable."

awarded $83.09 to Mr. Hollingsworth and $78.09 to Ms. Tomlinson, with these amounts to be paid by the Corporation of Guardianship "from funds presently held in trust in conformance with the Order entered on even date [in the Tyco litigation]."

The trial court concluded, with respect to the attorney's fee claim advanced by Bain Buzzard, that "the fees and expenses as itemized in the Motion were reasonable and necessary for the representation of" Ms. Zawacki, "especially in light of the contentious and complex issues that have arisen throughout the administration of this estate." For that reason, "the Court allow[ed] the fee application of [Bain Buzzard] in the amount of $29,023.00 and order[ed] the same to be assessed against" the ward's estate.

Finally, the trial court made extensive findings of fact addressing Booth Harrington's claim for attorney's fees:

45. On February 5, 2007, Judge Brown found that, pursuant to the flat fee arrangement in the aforementioned retainer agreement, the sum of $53,500.00 was owed by Ms. Clark to the firm.

46. The Court further found, in the February 5, 2007 order that the firm had represented the interests of Ms. Clark in subsequent hearings in the guardianship forum; that these matters were ongoing and required further representation[;] and that the hourly rate fees in the amount of $21,153.35 [were] due the firm over and above the flat fee retainer fees owed.

. . . .

48. In this case, the order of Judge Brown approving the settlement agreement was entered on February 5, 2007, well in advance of much of the work required by the flat fee retainer agreement. Because of circumstances beyond the imagination of all involved, after February 5, 2007, the parties engaged in protracted litigation, resulting in, among other things, [Booth Harrington's] being disqualified from representing Ms. Clark after May 21, 2007 and, because of Ms. Clark's restoration of competency, the abandonment of the need for a special needs trust.

49. These subsequent facts materially changed the position of the parties, and thus, the Court revisits the portion[s] of Judge Brown's order allowing fees to [Booth Harrington].

50. Specifically, the Court now finds that Phase 4 of the flat fee retainer agreement, which called for the development of a life

plan for Ms. Clark, was not required or performed by [Booth Harrington] largely because Ms. Clark was adjudged competent on May 21, 2007. She was, from that point forward, able to develop her own plans for life care.

51. Irrespective of whether a fee contract is in place between a lawyer and a client, a lawyer always has a duty to review the fee for reasonableness in consideration of all circumstances. . . . In this case, charging Ms. Clark $11,500.00 for Phase 4 is no longer appropriate because those service were not required or performed by [Booth Harrington].

. . . .

53. Judge Brown has previously approved the hourly arrangement for services rendered above and beyond those contemplated in the flat fee retainer agreement. . . . Judge Brown also awarded fees to [Booth Harrington] based upon time expended for the time period prior to February 1, 2007.

54. Likewise, the Court finds that with respect to the time expended by [Booth Harrington] through and including May 21, 2007, the date that the firm was relieved of its obligation to further represent Ms. Clark, such fees should also be approved because they were necessary for the ongoing representation of Ms. Clark and were above and beyond the services contemplated in the flat fee retainer agreement.

. . . .

56. The Court finds that the time expended by [Booth Harrington] after May 21, 2007 falls into one of two broad categories: (a) time expended completing work on the special needs trust and other matters already underway so as to facilitate an orderly transfer of responsibility to Ms. Clark, and (b) time expended responding to accusations, including accusations of contempt of court and professional malfeasance.

57. While both of these broad categories of work were necessary, the Court finds that as to time expended after May 21, 2007 completing the special needs trust and transferring funds, the firm was adequately compensated for this time through the flat fee retainer agreement.

58. With respect to time expended after May 21, 2007 by the firm defending itself against accusations of wrongdoing, the Court

finds that there is no legal or equitable basis for shifting these fees to Ms. Clark and therefore denies the firm's petition for fees incurred after May 21, 2007.

. . . .

60. Based upon the foregoing, the Court is disallowing the following amounts from the fee application of [Booth Harrington]:

    a. $11,500.00 for Phase 4 of the Flat Fee Retainer Agreement[.]

    b. $2,341.50 for work performed from [May 22, 2007 through June 29, 2007]. . .

    c. $12,145.17 for work performed and expenses incurred from [June 30, 2007, through September 6, 2007].

As a result, the trial court concluded that "the remaining fees requested by [Booth Harrington] . . . were reasonable and necessary for the representation of [Ms.] Clark, especially in light of the contentious and complex issues that have arisen throughout the administration of this estate" and awarded Booth Harrington $42,142.19 to be paid "by the Corporation of Guardianship, Inc., from funds presently held in trust in conformance with the Order entered on even date herewith in the [Tyco litigation]." Mr. Clark and Ms. Clark noted appeals to this Court from the trial court's order.

## II. Legal Analysis

### A. Attorney's Fees

[1] The Clarks first contend that the trial court erred by awarding attorney's fees to Bain Buzzard and Booth Harrington in light of their opposition to Mr. Clark's ultimately successful attempt to obtain restoration of her competency. In challenging the trial court's ruling, the Clarks argue both that the trial court lacked statutory authority to award attorney's fees to Bain Buzzard and Booth Harrington and that, even if the trial court had the authority to award the requested attorney's fees, it abused its discretion by awarding attorney's fees from the ward's estate. We disagree.

The first issue that we must address is the extent, if any, to which the trial court had the statutory authority to award attorney's fees to Bain Buzzard and Booth Harrington from the ward's estate. The Clarks contend that the trial court lacked the authority to award the fees in question because N.C. Gen. Stat. § 35A-1116(a), which governs

the assessment of costs in guardianship proceedings, only provides for the taxing of "reasonable fees and expenses of counsel for the petitioner." As a result, since neither Bain Buzzard nor Booth Harrington represented the petitioner in the proceeding in which Ms. Clark's competency was restored, the Clarks contend that the trial court erred by awarding attorney's fees to those firms from the ward's estate. We do not find this argument persuasive, however, since it erroneously assumes that N.C. Gen. Stat. § 35A-1116(a) represents the only statutory provision under which the trial court had the authority to approve payment of attorney's fees from the ward's estate.

According to N.C. Gen. Stat. § 35A-1202(10), a guardian of the person is "appointed solely for the purpose of performing duties relating to the care, custody and control of a ward." N.C. Gen. Stat. § 35A-1101(17) defines a "ward" as "a person who has been adjudicated incompetent. . . ." An incompetent adult "lacks sufficient capacity to manage the adult's own affairs or to make or communicate important decisions concerning the adult's person, family or property[,] whether the lack of capacity is due to mental illness . . . or similar cause or condition."

> The guardian of the person may give any consent or approval that may be necessary to enable the ward to receive medical, *legal*, psychological, or other professional care, counsel, treatment, or service. . . . The guardian of the person may give any other consent or approval on the ward's behalf that may be required or in the ward's best interest[.]

N.C. Gen. Stat. § 35A-1241(a)(3) (emphasis added). "It [is] well settled that the employment of counsel for legal advice and assistance in connection with the administration of the ward['s] estate is a proper expense to be charged [by the guardian], if in reasonable amount, and for the benefit of the [ward]." *Maryland Casualty Co. v. Lawing*, 225 N.C. 103, 108, 33 S.E.2d 609, 612 (1945) (citations omitted). As a result, given that the guardian of the person had the right to employ legal assistance for the benefit of the ward, the trial court had ample statutory authority to authorize payment of attorney's fees to Bain Buzzard and Booth Harrington for work performed on behalf of Ms. Clark and the guardian of the person pursuant to N.C. Gen. Stat. § 35A-1241(3). The fact that the trial court had the authority to approve fee awards to Bain Buzzard and Booth Harrington does not, however, end our inquiry, since the Clarks have also challenged the fee amounts actually approved in the trial court's order.

"Recovery of attorney's fees, even when authorized by statute is within the trial court's discretion and will only be reviewed for an abuse of that discretion." *Martin Architectural Prods., Inc. v. Meridian Constr. Co.*, 155 N.C. App. 176, 182, 574 S.E.2d 189, 193 (2002). In order to demonstrate an abuse of discretion, the party challenging an award of attorney's fees must show " 'that the trial court's ruling was manifestly unsupported by reason, or could not be the product of a reasoned decision.' " *Terry's Floor Fashions, Inc. v. Crown Gen. Contrs., Inc.*, 184 N.C. App. 1, 17, 645 S.E.2d 810, 820, *disc. review denied*, 362 N.C. 373, 664 S.E.2d 561 (2007) (quoting *Nationwide Mut. Fire Ins. Co. v. Bourlon*, 172 N.C. App. 595, 601, 617 S.E.2d 40, 45 (2005)).

According to the Clarks, the trial court abused its discretion by approving the payment of attorney's fees to the firms in question because they unsuccessfully opposed Mr. Clark's petition for the restoration of Ms. Clark's competency in furtherance of what the Clarks perceive to be their "financial self-interest in fighting the petition and keeping [Ms. Clark] an incompetent." According to the Clarks, "to require the prevailing party to pay tens of thousands of dollars to the losing 'parties' is certainly an abuse of discretion and contrary to the policy of this state." This is particularly true, in the Clarks' opinion, given Ms. Clark's expressed preference that Booth Harrington no longer serve as her attorney.

### 1. Bain Buzzard

[2] As we have already noted, Ms. Zawacki employed Bain Buzzard after Mr. Clark filed a petition, for which Ms. Clark later expressed support, seeking to have Ms. Clark's competency restored. By that time, Ms. Zawacki knew that Ms. Clark had a long history of substance abuse, including the use of alcohol, cocaine, marijuana and opiates. After the accident, neuropsychological testing revealed that Ms. Clark suffered from organic personality changes, including paranoid delusions. Ms. Clark also admitted that, during the time that she lived with Mr. Clark following the accident, she continued to use alcohol and marijuana. The relationship between Ms. Clark and Mr. Clark was characterized by volatile behavior, including accusations of abusive conduct. Mr. Clark had voluntarily resigned both as guardian of the estate and guardian of the person due to physical limitations that he attributed to a disability. In addition, Mr. Clark only expressed opposition to the existing arrangements for the handling of Ms. Clark's assets shortly before the settlement of the Tyco litigation.

When considered in aggregate, these factors justify Ms. Zawacki's concern that the restoration of Ms. Clark's competency and her own removal as guardian of Ms. Clark's person might well not serve Ms. Clark's best interests. As a result, despite the fact that Ms. Clark's competency was restored, we conclude that the trial court did not abuse its discretion by concluding that Ms. Zawacki's decision to employ Bain Buzzard was appropriate and that Bain Buzzard's fees should be paid from the ward's estate.

## 2. Booth Harrington

[3] Similarly, Booth Harrington was retained to assist in the establishment of a special needs trust and to perform other legal services for Ms. Clark relating to the preservation of her assets. Ensuring that such activities are carried out properly is clearly within the scope of the duties appropriately performed by a guardian of the person, particularly given that Ms. Clark was in the process of receiving a large personal injury settlement which needed to be handled carefully. Thus, the principal purposes for which Booth Harrington was employed by the guardian of the person was clearly in Ms. Clark's best interest.

An award of compensation for a service provider acting on behalf of a ward is not contingent upon the ward's approval. For that reason, the fact that Ms. Clark became dissatisfied with Booth Harrington is not determinative of the extent to which its fees should be paid from the ward's estate. In addition, for the reasons set forth above, the fact that Booth Harrington resisted the restoration of Ms. Clark's competency does not, given the facts revealed by the present record, disqualify the firm from receiving compensation from Ms. Clark's resources. In its order, the trial court carefully analyzed Booth Harrington's fees for reasonableness. Based upon that analysis, the trial court disallowed Booth Harrington's "Phase 4" fees given the restoration of Ms. Clark's competency and denied Booth Harrington's request for compensation for work performed after 21 May 2007 on the grounds that the firm's efforts "completing the special needs trust and transferring funds" were "adequately compensated . . . through the flat fee retainer agreement" and that "there is no legal or equitable basis for shifting" the cost of "defending itself against accusations of wrongdoing" after that date "to Ms. Clark." As a result, we conclude that the trial court did not abuse its discretion in awarding fees to Booth Harrington from the ward's estate.

B. Witness Fees

[4] Next, the Clarks challenge the trial court's decision to award witness fees to employees of the Corporation of Guardianship from the ward's estate. Although the Clarks concede that N.C. Gen. Stat. § 35A-1116(a) provides that "costs shall be assessed as in special proceedings" and that N.C. Gen. Stat. § 7A-306(c)(1) provides that witness fees are taxable as costs in special proceedings, they argue that N.C. Gen. Stat. § 35A-1116(c)(1) permits the taxing of costs to Ms. Clark's estate only "if the respondent is adjudicated incompetent and is not indigent" and that, since Ms. Clark's competency was restored, the necessary precondition for taxing witness fees to her estate did not exist in this instance. We disagree.

As we have already noted, the Corporation of Guardianship served as trustee of Ms. Clark's SNT. The Clarks' counsel subpoenaed Mr. Hollingsworth and Ms. Tomlinson to appear at the 10 September 2007 hearing. By the time that the subpoenas directed to Mr. Hollingsworth and Ms. Tomlinson were issued, the question of Ms. Clark's competence had already been decided in her favor. In the event that this Court were to adopt the Clarks' narrow reading of N.C. Gen. Stat. § 35A-1116(c)(1), a respondent in a guardianship who had been found to be competent could issue subpoenas without any risk of being held responsible for the resulting witness fees throughout the remainder of a guardianship proceeding, regardless of the extent to which the respondent's competency genuinely remained at issue. Given that the issue of Ms. Clark's competence had already been decided and given that the witness fee award in question resulted from subpoenas issued at the request of counsel for the Clarks, we conclude that the limitations set out in N.C. Gen. Stat. § 35A-1116(c)(1) do not control the present issue, that the assessment of these witness fees was governed by N.C. Gen. Stat. § 7A-306(c)(1), and that the trial court was entitled to assess the witness fees in question against the ward's estate.

The trial court also had the authority to assess the fees in question against the ward's estate pursuant to N.C. Gen. Stat. § 36C-7-709, which provides that "[a] trustee is entitled to be reimbursed out of the trust property for expenses properly incurred in the administration of the trust. . . ." Mr. Hollingsworth and Ms. Tomlinson were subpoenaed to appear at the 10 September 2007 hearing in their capacity as representatives of the trustee of the SNT, so that the trial court had authority to require the payment of any expenses associated with the performance of their duties from the assets of the trust. As a result,

IN RE CLARK

[202 N.C. App. 151 (2010)]

awarding witness fees to Mr. Hollingsworth and Ms. Tomlinson from Ms. Clark's assets was appropriate for this reason as well. Thus, the trial court did not err by requiring the payment of witness fees associated with the Corporation of Guardianship's compliance with a subpoena issued by the Clarks' counsel from Ms. Clark's estate.

## B. Challenged Findings of Fact

[5] The Clarks challenge Finding of Fact Nos. 15, 19, 33 and 57 on the grounds that these findings lack sufficient evidentiary support. When the trial court sits as the trier of fact, its findings of fact are conclusive on appeal if supported by competent evidence, even though there may be sufficient evidence to support alternative findings as well. *Creech v. Ranmar Props.*, 146 N.C. App. 97, 100, 551 S.E.2d 224, 227 (2001), *cert. denied* 356 N.C. 160, 568 S.E.2d 191(2002). After careful review of the challenged findings, we conclude that they either have sufficient record support or that any deficiencies in the evidentiary support for these findings of fact did not prejudice the Clarks.

In Finding of Fact No. 15, the trial court found that:

On March 1, 2007, a hearing was held before Judge Brown regarding the removal of [Ms.] Zawacki as [Ms.] Clark's guardian of the person. The motion was denied at that time. Also at that hearing, [Ms.] Clark made it known to the Court that she did not wish to have the firm of [Booth Harrington] represent her interests. The Court after hearing arguments of counsel, declined to terminate the firm's representation of Ms. Clark.

The record contains an affidavit by Mr. Johns in which he states that, "[o]n March 1, 2007, a hearing was held before Judge Brown after [Mr.] Clark petitioned for the emergency removal of [Ms.] Zawacki as [Ms.] Clark's guardian of the person" and that, "[a]fter hearing the arguments of counsel, Judge Brown declined to terminate this firm's representation of [Ms.] Clark." In addition, the record demonstrates that Ms. Zawacki continued to serve as a guardian of the person until Ms. Clark's competency was restored. Although the Clarks concede that Mr. Johns' affidavit supports Finding of Fact No. 15, they challenge this affidavit as "self-serving" and note that "[t]he record does not contain any transcript of such a hearing" or "any order of Judge Brown concerning these issues." The fact that the Clarks believe that other evidence would be preferable to Mr. Johns' affidavit does not, however, render Finding of Fact No. 15 lacking in adequate record

**IN RE CLARK**

[202 N.C. App. 151 (2010)]

support. As a result, Finding of Fact No. 15 is sufficiently supported by the record.

In Finding of Fact No. 19, the trial court found that, "by an order entered by Judge Gore on May 21, 2007, [Mr.] Johns and [Booth Harrington] were disqualified from further representation of [Ms.] Clark." On appeal, the Clarks argue that "the trial court neglected to state accurately and fully that the removal occurred prior to the hearing on competency." In essence, the Clarks are challenging the trial court's failure to place what they believe to be proper emphasis upon the order in which various events took place rather than the accuracy of the trial court's statement. As a result, given that Finding of Fact No. 19 is a correct statement of events that occurred on 21 May 2007 and given the absence of any indication that the trial court's failure to place the amount of emphasis upon the precise order of events that the Clarks deem appropriate prejudiced their chances for a different outcome before the trial court, we do not believe that the challenged finding is prejudicially erroneous.

In Finding of Fact No. 33, the trial court found that:

> The remedy for any alleged breach of fiduciary duty by a guardian lies in a civil action against that guardian and the guardian's bond. In this case, the parties, in their Memorandum of Settlement of May 21, 2007, have released and discharged [Ms.] Zawacki for any action she took individually or as guardian of the person of [Ms.] Clark.

The Clarks argue that, while Finding of Fact No. 33 contains a correct statement of "the remedy for a breach of fiduciary duty by a guardian," the trial court "erroneously" found "that the parties have released and discharged [Ms.] Zawacki of any liability she might have [for actions taken on behalf of Ms. Clark] in a Memorandum of Settlement signed on 21 May 2007." As we understand the Clarks' argument, they are not challenging the accuracy of the trial court's description of the Memorandum of Settlement; instead, they are contesting the correctness of the trial court's legal determination in light of its previous pronouncement "that [the Memorandum of Settlement] was not enforceable by contempt in that it was not 'an adjudication of the parties' respective rights.' " The challenged finding accurately describes the relevant provision of the Memorandum of Settlement. In addition, rather than holding the Memorandum of Settlement unenforceable, the trial court merely held that it could not be enforced through the use of the Court's contempt power. Lastly,

we are unable to see how any of the language in Finding of Fact No. 33 prejudiced the Clarks' chances for a more favorable outcome on the disputed issues which were before the trial court in this case. As a result, we are unable to discern any prejudicial error in Finding of Fact No. 33.

Finally, the trial court stated in Finding of Fact No. 57 that:

> While both of these broad categories of work were necessary, the Court finds that as to time expended after May 21, 2007 completing the special needs trust and transferring funds, the firm was adequately compensated for this time through the flat fee retainer agreement.

On appeal, the Clarks challenge the trial court's determination that the time expended by Booth Harrington "responding to accusations" after 21 May 2007 was "necessary." However, given that the trial court expressly declined to approve Booth Harrington's request for payment for this portion of its work from the ward's estate, any error on the part of the trial court in making the challenged finding could not have prejudiced the Clarks. As a result, we conclude that all of the challenged findings of fact either had adequate record support, did not involve any prejudicial error, or both.

## C. Sanctions Issues

[6] Finally, the Clarks challenge the trial court's determination that Mr. Johns did not commit any ethical violations and was not, for that reason, subject to monetary sanctions. After carefully reviewing the record in light of the applicable law, we are unable to discern any error of law in the trial court's rulings on these issues.

First, the Clarks seem to question Mr. Johns' conduct in connection with the formation of the retainer agreement. As best we understand their argument, the Clarks appear to question the failure to make guardian of the estate a party to the retainer agreement. However, N.C. Gen. Stat. § 35A-1241(a)(3) clearly authorizes a guardian of the person to retain legal counsel on behalf of the ward. For that reason, the fact that the guardian of the estate did not sign the retainer agreement is simply beside the point. Furthermore, as the trial court found, while Ms. Zawacki signed the retainer agreement prior to her official appointment as guardian of the person, she clearly ratified that agreement after assuming her fiduciary responsibilities. As a result, there is no reason to question

the manner in which Mr. Johns and Ms. Zawacki entered into the retainer agreement.

Secondly, the Clarks contend that Mr. Johns violated Rule 1.14 of the Rules of Professional Conduct by failing to make any effort to maintain a normal attorney-client relationship between himself and Ms. Clark and that the trial court erred by finding and concluding to the contrary. To be sure, Rule 1.14 of the N.C. Rules of Professional Conduct requires an attorney representing a client with diminished mental capacity, "as far as reasonably possible, [to] maintain a normal client-lawyer relationship with the client." However, Rule 1.14(b) of the Rules of Professional Conduct specifically provides that:

> [w]hen the lawyer reasonably believes that the client has diminished capacity, is at risk of substantial physical, financial or other harm unless action is taken and cannot adequately act in the client's own interest, the lawyer may take reasonably necessary protective action, including consulting with individuals or entities that have the ability to take action to protect the client.

In this instance, there is no question but that Ms. Clark wanted her competency restored, objected to Mr. Johns' actions to the extent that they obstructed her attempts to obtain that goal, and wanted him relieved as her attorney. However, the trial court found as a fact that Mr. Johns genuinely believed that Mr. Clark was attempting to obtain control over Ms. Clark's personal injury settlement for his own purposes and that it would not be in Ms. Clark's best interests for her competency to be restored. The Clarks have not argued on appeal that the record did not support the trial court's findings, and our independent review of the record shows that these findings have ample record support. As long as Ms. Clark's competency had not been restored, Mr. Johns had a duty to exercise his best judgment on behalf of his client, which is exactly what the trial court found that he did. Since the trial court's findings of fact have ample record support and since the trial court's findings support its conclusions, the trial court's determination with respect to this issue is sufficient to withstand the Clarks' challenge on appeal.

Finally, the Clarks contend that the trial court erred by failing to find and conclude that Mr. Johns violated Rule 1.7 of the Rules of Professional Conduct, which prohibits the concurrent representation of clients with conflicting interests. More particularly, the Clarks argue that Mr. Johns labored under impermissible conflicts of interest arising from his relationship with the Corporation of Guardian-

ship, from the advice he gave to the Corporation of Guardianship in connection with the employment of counsel for Ms. Zawacki following the filing of the petition for the restoration of Ms. Clark's competency, and from the support that he gave to Ms. Zawacki in resisting the petition for the restoration of Ms. Clark's competency. Although there is no question but, as the trial court found, that Mr. Johns served as Ms. Clark's counsel and had a long history of involvement with the Corporation of Guardianship, there is ample record support for the trial court's findings to the effect that the relationship between Mr. Johns and the Corporation of Guardianship was fully disclosed at the time that the Corporation for Guardianship was made trustee of the SNT. Furthermore, the Clarks have not demonstrated that Mr. Johns' relationship with the Corporation of Guardianship adversely affected his representation of Ms. Clark. In addition, the Clarks' complaints about Mr. Johns' support for Ms. Zawacki's opposition to the restoration of her competency amount to little more than a reiteration of their contention that Mr. Johns acted unprofessionally by opposing the restoration of her competency without adequately communicating with her, an argument which we have already addressed. As a result, we are unable to discern any error in the trial court's findings of fact and conclusions of law with respect to the conflict of interest issue.

<h2 style="text-align:center">Motion for Attorney's Fees</h2>

**[7]** On appeal, both Ms. Zawacki and Booth Harrington filed motions requesting an award of attorney's fees accrued during the appellate process. For the reasons stated below, we deny Booth Harrington's motion made pursuant to N.C.R. App. P. 34 and dismiss the motions made by both Ms. Zawacki and Booth Harrington pursuant to N.C. Gen. Stat. § 35A-1241 without prejudice to any right Ms. Zawacki and Booth Harrington may have to seek such relief from the Clerk of Superior Court, at least in the first instance.

Booth Harrington has requested that this matter be remanded to the trial court for an award of attorney's fees on appeal pursuant to N.C.R. App. P. 34, which authorizes the imposition of sanctions "against an attorney or party or both when the court determines that an appeal or any proceeding in an appeal was frivolous." Although we have rejected all of the Clarks' challenges to the trial court's order, we do not believe that their arguments on appeal were so totally without merit that we can brand them as completely frivolous. In addition, we see no evidence that the Clarks' appeal was taken for an improper

purpose, such as harassment or delay. As a result, we deny Booth Harrington's motion that this case be remanded for an award of attorney's fees on appeal pursuant to N.C.R. App. P. 34.

[8] Ms. Zawacki and Booth Harrington have both requested a remand for an award of attorney's fees on appeal pursuant to N.C. Gen. Stat. § 34A-1241 predicated on the logic underlying this Court's decision in *City Finance Co. v. Boykin*, 86 N.C. App. 446, 358 S.E.2d 83 (1987); *see also Hill v. Jones*, 26 N.C. App. 168, 215 S.E.2d 40 (1973). As a general proposition, "[t]he Clerk of Superior Court has original jurisdiction over matters involving management by a guardian of her ward's estate." *In re Caddell*, 140 N.C. App. 767, 769, 538 S.E.2d 626, 627-28 (2000). For that reason, we believe that all of the issues relating to the request made by Ms. Zawacki and Booth Harrington for reimbursement for attorney's fees on appeal pursuant to N.C. Gen. Stat. § 35A-1241, including both the extent to which they are entitled to an award of such fees pursuant to N.C. Gen. Stat. § 35A-1241 and the extent to which the Clerk deems any such fees "reasonable and proper expenditures" in the exercise of her discretion, should be resolved by the Clerk in the first instance. For that reason, we conclude that Ms. Zawacki's and Booth Harrington's motion for a remand for an award of attorney's fees on appeal pursuant to N.C. Gen. Stat. § 35A-1241 should be dismissed without prejudice to their right, if any, to submit a request for the payment of such fees to the Clerk.[7]

AFFIRMED.

Judges ELMORE and STROUD concur.

---

7. As we noted above, the Clerk's office recused itself from serving as a hearing officer in this matter. The exact scope of this recusal decision is not clear to us from our review of the record. In the event that the Clerk's office believes that it should not hear and decide the "attorney's fees on appeal" issue, then any motion that Ms. Zawacki and Booth Harrington choose to file should be heard and decided by the appropriate decisionmaker acting in place of the Clerk.