# COURT OF APPEALS

OF

## NORTH CAROLINA

AT

RALEIGH

---

SUZANNE ST. CLAIR BOWRON BELK, MINOR CHILD, BY AND THROUGH HER GUARDIAN
AD LITEM, SUZANNE B. BELK, PETITIONER v. WILLIAM I. BELK, RESPONDENT

No. COA11-604

(Filed 5 June 2012)

**1. Appeal and Error—affirmative defenses—failure to present issue for review—argument deemed abandoned**

The trial court did not err in a case involving the removal of respondent as custodian of all accounts created under the North Carolina Uniform Transfers to Minors Act for the benefit of his minor daughter by failing to dismiss the action based on the doctrines of *res judicata* and collateral estoppel. Respondent failed to present the Court of Appeals with an issue to review and respondent's argument as to his affirmative defenses was deemed abandoned.

**2. Interest—interest on sum ordered to be reimbursed— North Carolina Uniform Transfers to Minors Act— lost income**

The trial court did not err in a case involving the removal of respondent as custodian of all accounts created under the North Carolina Uniform Transfers to Minors Act (UTMA) for the bene-fit of his minor daughter by ordering respondent to pay interest on the sum he was ordered to reimburse for improper withdrawals, accruing from the dates of the wrongful disbursements. The trial court awarded interest on the wrongfully removed funds as a reimbursement of the lost income to the custodial account and did not award pre-judgment interest under N.C.G.S.

1

§ 24-5(b). Further, lost interest may be awarded as an item of damages in an accounting action under North Carolina's UTMA statute.

**3. Attorney Fees—Uniform Transfers to Minors Act—allowed in action to fix rights and duties of party under trust agreement—against respondent in personal capacity for egregious conduct—reasonableness of fees supported**

The trial court did not err by awarding attorney fees to petitioner in an action involving the removal of respondent as custodian of all accounts created under the North Carolina Uniform Transfers to Minors Act ("UTMA") for the benefit of his minor daughter.

**4. Fiduciary Relationship—breach of fiduciary duty—North Carolina Uniform Transfers to Minors Act—speculative investment**

The trial court did not err in a case involving the North Carolina Uniform Transfers to Minors Act by finding and concluding that a certain transaction was a speculative investment and was inappropriate for respondent to make as custodian for his minor daughter and that his making of the investment constituted a breach of his fiduciary duty. In dealing with custodial property, a custodian shall observe the standard of care that would be observed by a prudent person dealing with property of another.

**5. Fiduciary Relationships—removal of custodian—North Carolina Uniform Transfers to Minors Act—findings and conclusions supported**

Respondent's wholesale attack on each and every finding of fact made by the trial court in an action involving respondent's removal as custodian of all accounts created under the North Carolina Uniform Transfers to Minors Act for the benefit of his minor daughter was without merit. There was competent evidence in the record to support the trial court's findings and conclusions.

**6. Appeal and Error—appellate rules violations—motion to dismiss denied**

Petitioner's motion to dismiss respondent's appeal or, in the alternative, to strike respondent's brief before the Court of Appeals in a case involving respondent's removal as custodian of all accounts created under the North Carolina Uniform Transfers

**BELK v. BELK**

[221 N.C. App. 1 (2012)]

to Minors Act for the benefit of his minor daughter, was denied. Although there were multiple violations of the rules of appellate procedure by respondent, the Court chose to address respondent's appeal.

Appeal by respondent from judgment entered 26 August 2010 and order entered 28 September 2010 by Judge W. Erwin Spainhour in Mecklenburg County Superior Court. Heard in the Court of Appeals 14 March 2012.

*Horack, Talley, Pharr & Lowndes, PA, by Elizabeth T. Hodges, Elizabeth J. James and Kary C. Watson, for petitioner appellee.*

*Nexsen Pruet, PLLC, by Eugene Boyce, for respondent appellant.*

McCULLOUGH, Judge.

William I. Belk ("respondent") appeals from a judgment entered by the trial court removing him as custodian of all accounts created under the North Carolina Uniform Transfers to Minors Act ("UTMA") for the benefit of his minor daughter, Suzanne St. Clair Bowron Belk ("Suzanne"), and ordering him to reimburse one of such accounts for improper withdrawals, plus interest and attorney's fees. After careful review, we affirm.

## I. Factual and Procedural Background

Petitioner Suzanne B. Belk ("petitioner") and respondent are the biological mother and father of Suzanne, a minor child born on 10 August 1993. Suzanne is the youngest child of petitioner and respondent. Suzanne's two older siblings are now legal adults.

Respondent is a member of the Belk family that established Belk Stores, Inc., the owner of Belk department stores located throughout the southeastern United States. Over a number of years, Suzanne's paternal grandparents, Mr. and Mrs. Irwin Belk, made gifts of shares of stock in Belk Stores, Inc. to Suzanne and her siblings. These shares of stock were sold in 1996, and respondent received the proceeds of the sale of Suzanne's stock as her custodian.

Respondent established multiple custodial accounts for Suzanne pursuant to UTMA, and respondent deposited the proceeds from the sale of Suzanne's stock into these accounts. The financial institutions where such accounts were established included First Union Brokerage Services, Inc. (the "First Union account"), Citi Group—Smith Barney (the "Smith Barney account"), and The Financial Network

(the "Financial Network account"). Each account was established for the benefit of Suzanne, and respondent served as custodian of each such account.

On 31 July 2001, petitioner and respondent separated, and Suzanne has resided with petitioner since the separation. Petitioner, as guardian *ad litem* for Suzanne, filed the present action against respondent on 11 September 2009, seeking to obtain an accounting from respondent regarding his management of Suzanne's custodial funds and, to the extent the court found that respondent acted in violation of his duties as custodian under UTMA, to recover misappropriated funds from respondent, along with interest and attorney's fees. The present action was initially commenced as a special proceeding before the Clerk of Superior Court for Mecklenburg County. The clerk of superior court recused herself from presiding over this special proceeding, and the proceeding was transferred to the Superior Court Division for trial. An evidentiary hearing was held on 8 and 9 July 2010, and on 13, 17, and 18 August 2010.

On 26 August 2010, the trial court entered judgment finding multiple withdrawals from the Smith Barney account were inappropriate, were not for Suzanne's benefit, and.were not repaid by respondent. The trial court found that petitioner, on behalf of Suzanne, was entitled to reimbursement of the funds taken and misused by respondent from the custodial funds, totaling $71,869.80. The trial court further found that respondent must pay interest on the amount of lost income sustained as a result of the misuse of the custodial funds at the statutory interest rate of eight percent, totaling $58,944.24. In addition, the trial court found petitioner's attorney's fees were necessitated due to the vexatious refusal of respondent to provide an accounting to petitioner or to Suzanne as to the use of the custodial funds and that respondent should be required to reimburse petitioner for her reasonable and necessary attorney's fees, totaling $138,531.85. Based on those findings, the trial court concluded respondent should be removed as custodian for all of Suzanne's custodial accounts and ordered respondent to pay the above amounts for reimbursement, interest, and attorney's fees.

On 3 September 2010, petitioner filed a motion with the trial court pursuant to Rules 52(b) and 60(a) of the North Carolina Rules of Civil Procedure. On 28 September 2010, the trial court issued an order amending certain findings of fact and decretal·portions of its 26 August 2010 judgment. In its amended findings of fact, the trial court corrected the sums owed by respondent, finding and concluding that

respondent should pay $73,269.80 in reimbursement for inappropriate withdrawals from the Smith Barney account, $58,944.24 in interest on the sum owed, and $138,043.55 in attorney's fees. From the trial court's judgment and order amending that judgment, respondent timely appealed to this Court.

## II. Standard of Review

The applicable standard of review on appeal where, as here, the trial court sits without a jury, is " ' "whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment." ' " *In re Estate of Archibald*, 183 N.C. App. 274, 276, 644 S.E.2d 264, 266 (2007) (quoting *Cartin v. Harrison*, 151 N.C. App. 697, 699, 567 S.E.2d 174, 176 (2002) (quoting *Sessler v. Marsh*, 144 N.C. App. 623, 628, 551 S.E.2d 160, 163 (2001))). "Findings of fact by the trial court in a non-jury trial have the force and effect of a jury verdict and are conclusive on appeal if there is evidence to support those findings. A trial court's conclusions of law, however, are reviewable *de novo.*" *Shear v. Stevens Building Co.*, 107 N.C. App. 154, 160, 418 S.E.2d 841, 845 (1992) (citation omitted).

## III. *Res Judicata* and Collateral Estoppel

[1] Respondent first presents the argument on appeal that the trial court erred in failing to dismiss the present action based on the doctrines of *res judicata* and collateral estoppel. However, respondent makes no clear argument in this section, other than stating that prior lawsuits between petitioner and respondent determined the issues presented here regarding Suzanne's UTMA accounts. Respondent does not include any standard of review that would be applicable to appellate review of the trial court's denial of his motion. Respondent only cites one case in this entire 'argument,' which citation has nothing to do with the merits of these defenses.

> The function of all briefs required or permitted by [our appellate] rules is to define clearly the issues presented to the reviewing court and to present the arguments and authorities upon which the parties rely in support of their respective positions thereon. The scope of review on appeal is limited to issues so presented in the several briefs. Issues not presented and discussed in a party's brief are deemed abandoned.

N.C. R. App. P. 28(a) (2012). Moreover, an appellant's brief must contain:

An argument, to contain the contentions of the appellant with respect to each issue presented. Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned.

The argument *shall* contain a concise statement of the applicable standard(s) of review for each issue, which shall appear either at the beginning of the discussion of each issue or under a separate heading placed before the beginning of the discussion of all the issues.

The body of the argument and the statement of applicable standard(s) of review *shall* contain citations of the authorities upon which the appellant relies.

N.C. R. App. P. 28(b)(6) (2012) (emphasis added).

Respondent's only citation as to this issue states that "[i]n a trial without a jury, it is the duty of the trial judge to resolve all issues raised by the pleadings and the evidence by making findings of fact and drawing therefrom conclusions of law upon which to base a final order or judgment." *Small v. Small*, 107 N.C. App. 474, 477, 420 S.E.2d 678, 681 (1992). We acknowledge this duty extends to all affirmative defenses raised by respondent in his answer. *Pittman v. Barker*, 117 N.C. App. 580, 591-92, 452 S.E.2d 326, 333 (1995).

Here, as respondent points out, the trial court failed to enter any written findings of fact regarding either of respondent's affirmative defenses. Ordinarily, when all such issues are not so resolved by the trial court, this Court must vacate the order or judgment and remand to the trial court for completion. *Small*, 107 N.C. App. at 477, 420 S.E.2d at 681. Nonetheless, in the present case, we decline to both vacate the trial court's judgment and remand the cause back to the trial court for entry of findings of fact as to respondent's affirmative defenses, as respondent has cited no authority nor presented a clear argument in support of the merits of his appeal on this issue. We also note respondent presented no argument whatsoever regarding his affirmative defense of the statute of limitations. " 'To obtain appellate review, a question raised by an [issue on appeal] must be presented *and argued* in the brief.' " *N.C. State Bar v. Gilbert*, 189 N.C. App. 320, 328, 663 S.E.2d 1, 6 (2008) (quoting *State v. Barfield*, 127 N.C. App. 399, 401, 489 S.E.2d 905, 907 (1997)). Because respondent has failed completely in his duty to present us with an issue to review, we deem respondent's argument as to his affirmative defenses to be abandoned. *Id.*

## IV.  Interest Award

[2]  In his second argument on appeal, respondent argues the trial court erred in ordering him to pay interest on the reimbursement sum, accruing from the dates of the wrongful disbursements. Citing N.C. Gen. Stat. § 24-5(b) (2011), respondent contends the trial court could not award "pre-judgment interest" in this case because it made no finding that the reimbursement sum constitutes compensatory damages, and therefore, the trial court could only award interest from the date the judgment was entered. Respondent further contends the amount in dispute in this case was not readily ascertainable, also disqualifying the application of "pre-judgment interest." Despite respondent's arguments as to the applicable statutes for awarding pre-judgment interest, however, we believe it is clear from the trial court's order that it was neither operating under the statutes governing "interest on judgments" nor making an award of "pre-judgment interest" in this case.

Section 24-5(b) of our General Statutes, relied on by respondent, governs "interest on judgments" in actions not based on contract:

> In an action other than contract, any portion of a money judgment designated by the fact finder as compensatory damages bears interest from the date the action is commenced until the judgment is satisfied. Any other portion of a money judgment in an action other than contract, except the costs, bears interest from the date of entry of judgment . . . until the judgment is satisfied. Interest on an award in an action other than contract shall be at the legal rate.

N.C. Gen. Stat. § 24-5(b). "The legal rate of interest shall be eight percent (8%) per annum for such time as interest may accrue, and no more." N.C. Gen. Stat. § 24-1 (2011).

Here, however, despite its reference to N.C. Gen. Stat. § 24-1, defining the legal rate of interest, the trial court did not purport to award pre-judgment interest or interest on the judgment in this case. The trial court made the following pertinent findings of fact and conclusions of law:

> [Finding of Fact] 15. The Petitioner, on behalf of the minor, is entitled to reimbursement of the funds taken and misused by the Respondent from the custodial funds, *plus interest*. This court has considered the expert testimony of Peter Bell, C.P.A. in determining *the amount of lost income* sustained as a result of the

misuse of custodial funds. The court has elected to use Mr. Bell's "Method #2", as detailed in his report to the court *in determining the amount that should be repaid as lost income.* In that method, interest is calculated at the rate of eight percent—the statutory interest rate provided in N.C. Gen. Stat. § 24-1. Using that method, which the court finds presumptively reasonable in that it is statutory, the total interest that the Respondent should pay is $58,944.24.

[Conclusion of Law] 4. The Respondent should be required to pay interest on funds improperly removed from the custodial account. Again, the court is mindful of the lack of case law in North Carolina [for] a case arising under the UTMA, and the court has again considered the law in other jurisdictions with similar statutes. In Wilson v. Wilson, the Kansas Court of Appeals upheld a lower court's ruling directing a custodian to repay the funds removed from a custodial account, with interest. Wilson v. Wilson, 37 Kan. App. 2d 564 (2007). This court is persuaded by the reasoning in the Wilson case. *If the Respondent had not improperly expended and invested Petitioner's custodial funds, the minor would have had the benefit of those funds growing in the custodial account.*

[Decretal] 3. The Respondent, William I. Belk, shall reimburse the Smith Barney account in the amount of $71,869.80, plus interest in the amount of $58,944.24.

(Emphasis added.) The trial court's order amending certain findings of fact and decretal portions of its judgment did not alter these findings and conclusions regarding the amount of interest to be repaid by respondent.

From the trial court's findings of fact and conclusions of law, it is clear the trial court awarded interest on the wrongfully removed funds, accruing from the date the funds were removed, as a reimbursement of the lost income to the custodial account. The trial court was not purporting to award pre-judgment interest under N.C. Gen. Stat. § 24-5(b). The only reason the trial court mentions N.C. Gen. Stat. § 24-1 is because that statute establishes a legal rate of interest, which was employed by the expert witness in calculating the amount of interest that would have accrued on the withdrawn funds had they not been improperly removed by respondent.

Respondent does not appear to challenge the trial court's finding of fact as to the calculation of the amount of interest owed. Thus, that

finding is presumed correct and is binding on appeal. *In re Schiphof*, 192 N.C. App. 696, 700, 666 S.E.2d 497, 500 (2008). Rather, respondent appears to challenge only the trial court's conclusion of law that it may require respondent to pay such interest in the first instance. Thus, we review *de novo* the trial court's conclusion of law that lost interest may be awarded as an item of damages in an accounting action under North Carolina's UTMA statute.

Chapter 33A of our General Statutes, entitled "North Carolina Uniform Transfers to Minors Act," governs the creation and mainte- nance of UTMA accounts in this State. N.C. Gen. Stat. § 33A-12 (2011) establishes both a fiduciary duty of care owed to the minor by the custodian in managing the UTMA account and a duty to keep records of all transactions with respect to custodial property. *Id.* § 33A-12(b), (e). This section also mandates that the custodian make these records available for inspection by a parent or legal representative of the minor, or by the minor if the minor has attained the age of 14 years. *Id.* § 33A-12(e).

Under N.C. Gen. Stat. § 33A-19(a) (2011), a minor who has attained the age of 14 years, the minor's guardian of the person or legal repre- sentative, or an adult member of the minor's family, among others, may petition the court "for an accounting by the custodian or the custodian's legal representative." *Id.* Further, under N.C. Gen. Stat. § 33A-18(f) (2011), "an adult member of the minor's family, a guardian of the person of the minor, the guardian of the minor, or the minor if the minor has attained the age of 14 years may petition the court to remove the custodian for cause . . . ." *Id.* "If a custodian is removed under G.S. 33A-18(f), the court shall require an accounting and order delivery of the custodial property and records to the successor cus- todian and the execution of all instruments required for transfer of the custodial property." N.C. Gen. Stat. § 33A-19(d).

Notably absent under these UTMA provisions, however, are any directives to the trial court regarding the accounting remedy pro- vided for under N.C. Gen. Stat. § 33A-19(a) and (d). Therefore, we must determine the extent of the remedy our Legislature intended to provide under this section. "The primary rule of statutory construc- tion is that the intent of the legislature controls the interpretation of a statute." *Tellado v. Ti-Caro Corp.*, 119 N.C. App. 529, 533, 459 S.E.2d 27, 30 (1995). Thus, when a statute is silent or ambiguous with respect to a specific issue, "the courts should consider the language of the statute, the spirit of the act, and what the act seeks to accom-

plish[,]" as well as "the law that existed at the time of the statute's enactment to determine legislative intent." *Id.*

Chapter 33A codifies the uniform statutory scheme addressing gifts to minors, which was drafted and approved by the National Conference of Commissioners on Uniform State Laws in order "to embody and to create uniformity among states' reforms in their custodianship statutes." Patricia Cramer Jenkins, Note, *North Carolina Enacts the Uniform Transfers to Minors Act*, 66 N.C. L. Rev. 1349, 1352 n.41 (1988); *see also* Unif. Transfers to Minors Act, Prefatory Note, 8C U.L.A. 3 (2001). Included in Chapter 33A of our General Statutes is the following section: "This Chapter shall be applied and construed to effect its general purpose to make uniform the law with respect to the subject of this Chapter among states enacting it." N.C. Gen. Stat. § 33A-23 (2011). As petitioner points out, the remedies available in an accounting action under North Carolina's UTMA statute presents an issue of first impression in this state. Indeed, the trial court noted "the lack of case law in North Carolina [for] a case arising under the UTMA[.]" Accordingly, as the trial court properly concluded, where North Carolina law fails to answer a question under UTMA, a uniform statutory scheme, "we may look to other jurisdictions' resolutions of the question to inform our own, thus encouraging cross-jurisdictional uniformity." *In re Gumpher,* 840 A.2d 318, 321 (Pa. Super. Ct. 2003); *see Skinner v. Preferred Credit,* 172 N.C. App. 407, 413, 616 S.E.2d 676, 680 (2005) ("Because this case presents an issue of first impression in our courts, we look to other jurisdictions to review persuasive authority that coincides with North Carolina's law."), *aff'd,* 361 N.C. 114, 638 S.E.2d 203 (2006).

In *Wilson v. Wilson,* 154 P.3d 1136 (Kan. Ct. App. 2007), cited by the trial court, the Court of Appeals of Kansas affirmed the district court's ordering a custodian, the father of the minor, to reimburse amounts determined to have been wrongfully taken from the minor's UTMA account, "plus interest." *Id.* at 1142, 1145, 1148. Similarly, in the case of *In re Marriage of Rosenfeld,* 668 N.W.2d 840 (Iowa 2003), the Supreme Court of Iowa found that a custodian, the father of the minor, had misappropriated his daughter's UTMA funds. *Id.* at 845. The Court held that "[w]hen a custodian misappropriates UTMA funds, the custodian shall reimburse the child for those funds." *Id.* Accordingly, the Supreme Court of Iowa, under *de novo* review, ordered the custodian to reimburse the total amount the minor's funds were worth after applying "an interest rate of five percent annually." *Id.*

In *Buder v. Sartore*, 774 P.2d 1383 (Colo. 1989), the Supreme Court of Colorado elaborated extensively on this issue. In *Buder*, the Court noted "[t]he overriding goal of the . . . UTMA is to preserve the property of the minor." *Id.* at 1387. The Court quoted the section of Colorado's UTMA statute providing for an accounting remedy, which is identical to N.C. Gen. Stat. § 33A-19(a), and stated this section "contains an implied grant of authority which permits a trial court to impose a wide variety of remedies." *Id.* at 1389. The Court further stated that because this section "authorizes the court to order a custodian to account for funds held on behalf of the minor[,]" the statute must be construed "as not only allowing the trial court to require a custodian to provide a statement of the account, but also as enabling the court to render a judgment should the statement indicate that the account had been improperly maintained." *Id.* The Court explained that "[t]he function of an accounting is to determine whether the custodian has properly maintained the account and, if not, to adjust the current account to reflect what is proper. When adjusting an account, the trial court is given broad discretion in fashioning an appropriate remedy." *Id.* at 1390 (citation omitted). Accordingly, the Supreme Court of Colorado affirmed the trial court's assessment of damages, holding "the trial court's order that [the custodian] pay . . . for loss of appreciation of the funds represents a realistic recognition of the opportunity costs associated with investing." *Id.*

Furthermore, although our Uniform Trust Code, by its terms, does not apply to Chapter 33A for custodial accounts, we nonetheless find similar provisions of our Uniform Trust Code persuasive in resolving this issue, especially given that the National Conference of Commissioners on Uniform State Laws, in drafting the Uniform Transfers to Minors Act, noted that "the Act might be considered a statutory form of trust or guardianship that continues until the minor reaches 21." Unif. Transfers to Minors Act, Prefatory Note, 8C U.L.A. 3 (2001); *see also Jenkins, supra,* 66 N.C. L. Rev. at 1354. Under N.C. Gen. Stat. § 36C-10-1002 (2011), a trustee who commits a breach of trust is liable for "[t]he amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred[.]" *Id.* § 36C-10-1002(a)(1); *see generally* 76 Am. Jur. 2d *Trusts* § 381 (2005) ("A trustee is chargeable in the accounting with interest for which he or she is liable as a consequence of some breach of duty in the administration of the trust. For example, *a trustee is liable for interest on trust property or funds invested imprudently* or unlawfully." (emphasis added)).

We find these authorities persuasive on this issue and recognize the greater weight of authority among other jurisdictions deciding this issue allow an award of interest, representing the loss of appreciation of the funds wrongfully disbursed, as an element of damages recoverable in an accounting action under UTMA. These authorities are consistent with the general definition of an "accounting," which is "an adjustment of the accounts of the parties *and a rendering of a judgment for the balance ascertained to be due.*" 1 Am. Jur. 2d *Accounts and Accounting* § 52 (2005) (emphasis added); *see also* Black's Law Dictionary 21 (8th ed. 2007) (defining an "accounting" as "[a] legal action to compel a defendant to account for *and pay over* money owed to the plaintiff but held by the defendant," who is "often the plaintiff's agent." (emphasis added)).

We agree with the trial court's conclusion that respondent should be liable for the interest that would have accrued on the amount of the funds wrongfully disbursed from Suzanne's UTMA accounts, because, as the trial court reasoned, "[i]f the Respondent had not improperly expended and invested Petitioner's custodial funds, the minor would have had the benefit of those funds growing in the custodial account." In addition, we find no error by the trial court in selecting the legal rate of interest in calculating the amount of interest owed by respondent, given that such rate is established by statute. *Cf. Lea Company v. N.C. Bd. of Transportation,* 317 N.C. 254, 261, 345 S.E.2d 355, 359 (1986) (holding the statutory, legal rate of interest is deemed presumptively reasonable in condemnation proceedings). Accordingly, we find respondent's argument on this issue to be without merit, and we affirm the trial court's finding of fact, conclusion of law, and decretal award of interest to petitioner in the amount of $58,944.24.

## V. Attorney's Fees

[3] We next address respondent's third and fourth arguments on appeal, in which respondent challenges the trial court's award of attorney's fees to petitioner.

### A. *Statutory Authority*

Respondent first argues there is no statutory authority for awarding attorney's fees under Chapter 33A, and therefore, the trial court could not award attorney's fees to petitioner in this case as a matter of law. " '["]It is settled law in North Carolina that ordinarily attorneys fees are not recoverable as an item of damages or of costs, absent

express statutory authority for fixing and awarding them.["]' " *Eakes v. Eakes*, 194 N.C. App. 303, 312, 669 S.E.2d 891, 897 (2008) (quoting *Baxley v. Jackson*, 179 N.C. App. 635, 640, 634 S.E.2d 905, 908 (2006) (quoting *Records v. Tape Corp. and Broadcasting System v. Tape Corp.*, 18 N.C. App. 183, 187, 196 S.E.2d 598, 602 (1973))). This general rule is known as the "American rule." *Stephenson v. Bartlett*, 177 N.C. App. 239, 244, 628 S.E.2d 442, 445 (2006). "The simple but definitive statement of the rule is: '[C]osts in this State, are entirely creatures of legislation, and without this they do not exist.' " *City of Charlotte v. McNeely*, 281 N.C. 684, 691, 190 S.E.2d 179, 185 (1972) (alteration in original) (quoting *Office v. Commissioners*, 121 N.C. 29, 30, 27 S.E. 1003 (1897)).

Under UTMA, the clerk of superior court has original jurisdiction to order an accounting and determine the personal liability of the custodian and to enter orders relating to the removal of the custodian. *Guerrier v. Guerrier*, 155 N.C. App. 154, 158, 574 S.E.2d 69, 72 (2002); N.C. Gen. Stat. § 33A-1(4), -18(f), -19. Such proceedings are "special proceedings" in which costs "shall be as allowed in civil actions, unless otherwise specially provided." N.C. Gen. Stat. § 6-26 (2011). When an issue of fact is raised before the clerk, "the clerk shall transfer the proceeding to the appropriate court[,]" in which "the proceeding is subject to the provisions in the General Statutes and to the rules that apply to actions initially filed in that court." N.C. Gen. Stat. § 1-301.2(b) (2011). Accordingly, "[t]he general rule in North Carolina is that attorney's fees are not allowed as a part of the costs *in civil actions or special proceedings*, unless there is express statutory authority for fixing and awarding the attorney's fees." *Alston v. Fed. Express Corp.*, 200 N.C. App. 420, 424, 684 S.E.2d 705, 707 (2009) (emphasis added). Respondent correctly points out that North Carolina's UTMA statute is silent regarding an award of attorney's fees and contains no express statutory authority for such an award.

Nonetheless, N.C. Gen. Stat. § 6-21 (2011) enumerates certain types of cases in which "attorneys' fees may be included as a part of the costs in such amounts as the court in its discretion determines and allows." *Hoskins v. Hoskins*, 259 N.C. 704, 708, 131 S.E.2d 326, 329 (1963); *see* N.C. Gen. Stat. § 6-21 ("The word 'costs' as the same appears and is used in this section shall be construed to include reasonable attorneys' fees in such amounts as the court shall in its discretion determine and allow[.]"). One such action listed under N.C. Gen. Stat. § 6-21 is "any action or proceeding which may require the construction of any will or trust agreement, or fix the rights and

duties of parties thereunder." *Id.* § 6-21(2). Nothing in the legislative history of this section indicates that our Legislature intended to expressly limit the term "trust agreement," as it appears in section 6-21(2), to only those governed under our Uniform Trust Code, Chapter 36 of our General Statutes. Indeed, Chapter 36, by its terms, expressly excludes multiple types of "trusts," including "custodial arrangements under Chapter 33A of the General Statutes and Chapter 33B of the General Statutes [governing custodial *trusts*]." N.C. Gen. Stat. § 36C-1-102 (2011).

As noted in the previous discussion, the National Conference of Commissioners on Uniform State Laws included a prefatory note regarding UTMA, stating "the Act might be considered a *statutory form of trust* or guardianship that continues until the minor reaches 21." Unif. Transfers to Minors Act, Prefatory Note, 8C U.L.A. 3 (2001) (emphasis added). Leading treatises and other legal publications are consistent in recognizing the parallels between a custodial account established under UTMA and a formal trust, especially noting the similarity between the rights and duties of an UTMA custodian and a trustee. *See* 1 Austin Wakeman Scott, William Franklin Fratcher, & Mark L. Ascher, *Scott and Ascher on Trusts* § 2.3.12 (5th ed. 2006) (describing the similarities between an UTMA custodial account and a trust and noting that "the custodian has powers and duties that are quite similar to those of a trustee"); William M. McGovern, Jr., *Trusts, Custodianships, and Durable Powers of Attorney*, 27 Real Prop. Prob. & Tr. J. 1, 6-10 (1992) (explaining the "[s]imilarities [b]etween [t]rust and [c]ustodianship," noting that "[m]ost of the distinctions between custodianships and trusts are not significant" and that "[b]ecause custodianships and trusts are so similar, courts often equate them"); *see also* Black's Law Dictionary 19 (8th ed. 2007) (defining "custodial account" as an account over which "[t]he custodian has powers and fiduciary duties similar to those of a trustee, except that the custodian is not under a court's supervision"). Indeed, the Restatement (Third) of Trusts refers to UTMA custodial accounts as "virtual trusts," noting that UTMA custodial accounts "are substantively so similar to express private trusts in their characteristics, applicable legal principles, and role in the donative transfer of family property" and that any substantive differences between an UTMA custodial account and a trust "generally can be viewed as differences resulting from variations in the 'terms of the trust.' " Restatement (Third) of Trusts § 1 cmt. a, reporter's note cmt. a (2003). Courts in other states have also recognized the parallels between an UTMA cus-

todial account and a formal trust, especially with regard to the function of the custodian. *See Roberts v. Roberts*, 908 A.2d 1273, 1279 (N.J. Super. Ct. Ch. Div. 2006) ("In some respects, the custodial arrangement under the UTMA is like a trust."); *Richards v. Seattle Metro. Credit Union*, 68 P.3d 1109, 1113 (Wash. Ct. App. 2003) ("[A] custodian can function virtually as a trustee with respect to management of the custodial property."); *Sutliff v. Sutliff*, 528 A.2d 1318, 1323 (Pa. 1987) ("[A] custodian's duties may be more properly analogous to those of a trustee with the broadest possible discretionary powers."). *But see In re Marriage of Rosenfeld*, 668 N.W.2d 840, 844 (Iowa 2003) ("We disagree and conclude transfers made to children under UTMA are not trusts.").

Given this generally accepted categorization of UTMA accounts contained in the legislative history of the uniform law adopted by our Legislature, coupled with the fact that types of "trusts" other than those governed under our Uniform Trust Code exist under North Carolina law, we believe the generic provision in N.C. Gen. Stat. § 6-21(2) allowing for the award of attorney's fees in an action to fix the rights and duties of a party under a trust agreement encompasses actions under UTMA for the removal of a custodian and resulting accounting, such as the present case. When the court must order an accounting and determine the personal liability of the custodian under section 33A-19(a) or when the court must order the removal of a custodian under section 33A-18(f) of UTMA, the court is necessarily engaged in an action to determine the rights and duties of the custodian on the custodial account, a statutory form of trust agreement, thereby riggering the statutory authority under N.C. Gen. Stat. § 6-21(2) for attorney's fees in such actions.

Given the lack of case law in North Carolina on this issue, we again look to other jurisdictions' resolution of this issue in an effort "to make uniform the law" with respect to this issue. N.C. Gen. Stat. § 33A-23. We find the reasoning by the Supreme Court of Colorado in *Buder v. Sartore*, 774 P.2d 1383 (Colo. 1989), to be persuasive precedent on this issue. In Buder, the Supreme Court of Colorado likewise recognized the "general rule" that "absent a specific contractual, statutory, or procedural rule providing otherwise, attorney fees are generally not recoverable." *Id.* at 1390. Nonetheless, the Court noted that attorney's fees may be assessed in a breach of trust action, pursuant to the rationale that "the object of an award of attorney fees in a breach of trust action is to make the injured party whole again[.]" *Id.* at 1391. The Court further noted the rationale for awarding attor-

ney's fees in breach of trust actions is "equally applicable in an action against a custodian for breach of fiduciary duty." *Id.* "The fundamental purpose of performing an accounting in this case, that of making the children whole by returning them to the position they would have enjoyed had [the custodian] not imprudently invested their funds, would be frustrated by requiring them to pay attorney fees out of their funds." *Id.* Thus, the Supreme Court of Colorado held the trial court's "imposition of reasonable attorney fees is warranted." *Id.*

We also note that two other jurisdictions, Connecticut and Virginia, have likewise allowed attorney's fees awards in UTMA accounting proceedings in the face of the general American rule disallowing attorney's fees in the absence of express statutory authority. In *Mangiante v. Niemiec*, 910 A.2d 235 (Conn. App. Ct. 2006), the Appellate Court of Connecticut noted that "Connecticut generally follows the American rule with regard to attorney's fees." *Id.* at 238. Nonetheless, the Court noted that "our courts regularly have recognized limited equitable exceptions to the American rule." *Id.* The Court stated that such decisions "emphasize that the equitable nature of the underlying action provides a basis for the equitable award of attorney's fees" and noted that other jurisdictions, including Hawai'i, Maryland, Montana, and New Jersey, recognize a similar exception to the American rule for equitable actions. *Id.* at 239. The Appellate Court of Connecticut then held:

> The circumstances of this [UTMA accounting] case fully justify the trial court's invocation of equitable authority for awarding attorney's fees because, without such an award, the plaintiff could not be made whole. As the record demonstrates, at trial and on appeal, [the minor plaintiff] needed legal assistance to enable her to secure the trust corpus to which she was entitled under the act.

*Id.* The Court further noted:

> [T]he act expressly confers on the court the power to order an equitable remedy in the form of an accounting. . . . Actions for accounting generally invoke the equitable powers of the court. . . . A minor beneficiary who must expend more in attorney's fees to recover the corpus of the account than its original value cannot be made whole again without an award of attorney's fees.

*Id.* at 240-41.

Most recently, in *Carlson v. Wells*, 705 S.E.2d 101 (Va. 2011), the Supreme Court of Virginia likewise noted "[t]he general rule in this

Commonwealth is that in the absence of a statute or contract to the contrary, a court may not award attorney's fees to the prevailing party." *Id.* at 109 (alteration in original) (internal quotation marks and citation omitted). The Court noted that the facts underlying the UTMA action in that case established a "pattern of misconduct, specifically a pervasive, wanton dereliction of the duties imposed by the General Assembly on UTMA custodians[,]" such that an award of attorney's fees to the plaintiffs was permissible, given such an exception established in the state's prior case law. *Id.* at 109-10.

We note *Mangiante* and *Carlson* because these two additional cases bolster the greater weight of authority allowing for attorney's fees awards in actions for an accounting under UTMA. However, we further note the reasoning behind these holdings allowing such attorney's fees is nonetheless inapplicable under North Carolina law. Although our Supreme Court has stated that "[i]f an action is equitable in nature, the taxing of the costs is within the discretion of the court, and the court may allow costs in favor of one party or the other or require the parties to share the costs[,]" *Bailey v. State of North Carolina*, 348 N.C. 130, 162, 500 S.E.2d 54, 73 (1998), the Court has excluded attorney's fees as a type of "cost" which the trial court may award based on its equitable authority alone. *Hoskins*, 259 N.C. at 707-08, 131 S.E.2d at 328-29. In addition, this Court has recently noted that "[i]f relevant statutes do not permit reimbursement of attorneys' fees, we may not award attorneys' fees *even on equitable grounds.*" *Point Intrepid, LLC v. Farley*, ____ N.C. App. ____, ____, 714 S.E.2d 797, 805 (2011) (emphasis added); *see also McNeely*, 281 N.C. at 691, 190 S.E.2d at 185 ("Since costs may be taxed *solely* on the basis of statutory authority, it follows a fortiori that courts have no power to adjudge costs 'against anyone on mere equitable or moral grounds.' " (emphasis added) (quoting 20 C.J.S. *Costs* § 1, 2 (1940))).

Despite the holdings in *Buder*, *Mangiante*, and *Carlson*, respondent cites two other published cases from Kansas and Iowa and argues the greater weight of authority does not, in fact, allow attorney's fees in UTMA accounting actions. The first case cited by respondent is *Wilson v. Wilson*, 154 P.3d 1136 (Kan. Ct. App. 2007). In *Wilson*, the Court of Appeals of Kansas summarily noted that "[g]enerally, the district court is not authorized to award attorney fees in the absence of a statute or express provision in a contract[,]" and held, without further explanation, that "[h]ere, the district court did not have authority to award attorney fees." *Id.* at 1148. Accordingly, the Court denied the minors' request for attorney's fees in their UTMA accounting action.

The second case cited by respondent is *In re Marriage of Rosenfeld*, 668 N.W.2d 840 (Iowa 2003). In *Rosenfeld*, the Supreme Court of Iowa also noted that "[a]s a general rule in Iowa, . . . attorney fees are not allowed in the absence of a statute or contract authorizing such an award." *Id.* at 848. The Court then summarily noted that Iowa's UTMA statute "does not authorize a court to grant attorney fees" and declined to make an exception to the general principle in that case. *Id.* Our review of these two cases, however, does not reveal whether Kansas or Iowa has any statutory authority for an award of attorney's fees similar to N.C. Gen. Stat. § 6-21(2) for actions involving a determination of rights and liabilities under a trust agreement. Thus, we are not persuaded by the holdings in these two cases on this issue.

Rather, we believe the greater weight of authority allows for an award of attorney's fees in actions against an UTMA custodian for removal and an accounting. *See also* Susan T. Bart, *No Taxpayer Left Behind: Tax-Wise Techniques for Funding Education, in* Planning Techniques for Large Estates, SN048 ALI-ABA 1723, 1851 (2008) ("The plaintiffs in a successful action against a custodian for breach of fiduciary duties may collect attorneys' fees."); Major Paul M. Peterson, *The Uniform Transfers to Minors Act: A Practitioner's Guide*, Army Law at 3, 11 (May 1995) ("Courts may require custodians to pay the minor damages for any breach of fiduciary duty that causes a loss of custodial property. The custodian also may be required to pay the minor's attorneys fees.").

Further, we believe there is ample authority providing for not only an award of attorney's fees in this case, but also for that award to be assessed against respondent personally, as custodian, rather than against the corpus of Suzanne's UTMA account. Foremost, persuasive precedent from other jurisdictions on this issue reason that the goal of a breach of fiduciary duty action under UTMA is to make the minor beneficiary whole, which cannot be accomplished if the minor, either personally or by way of her account funds, must expend more in attorney's fees to recover the lost corpus of the account than its original value. *Buder*, 774 P.2d at 1391 ("The fundamental purpose of performing an accounting in this case, that of making the children whole by returning them to the position they would have enjoyed had [the custodian] not imprudently invested their funds, would be frustrated by requiring them to pay attorney fees out of their funds."); *Mangiante*, 910 A.2d at 241 ("We agree with the Supreme Court of Colorado that the goal of a breach of fiduciary duty action under the

act is to make the minor beneficiary whole. A minor beneficiary who must expend more in attorney's fees to recover the corpus of the account than its original value cannot be made whole again without an award of attorney's fees. Colorado law is consistent with the scholarly view that 'if the trustee was at fault in causing the litigation, he must personally bear the expenses of the litigation.' 3 W. Fratcher, Scott on Trusts (4th ed. 1988) § 188.4, p.69.").

Furthermore, because the legislative history of the uniform UTMA statute indicates that UTMA custodial accounts are regarded as a form of statutory trust, we again find similar provisions of our Uniform Trust Code as additional persuasive authority. Section 36C-10-1004 (2011) of our Uniform Trust Code expressly provides that "[i]n a judicial proceeding involving the administration of a trust, the court may award costs and expenses, including reasonable attorneys' fees, as provided in the General Statutes." *Id.* The Official Comment notes this section "codifies the court's historic authority to award costs and fees, including reasonable attorney's fees, in judicial proceedings grounded in equity." N.C. Gen. Stat. § 36C-10-1004 official comment. Notably, the Official Comment to this section further provides:

> The court may award a party its own fees and costs from the trust. The court may also charge a party's costs and fees against another party to the litigation. *Generally, litigation expenses were at common law chargeable against another party only in the case of egregious conduct such as bad faith or fraud.*

*Id.* (emphasis added).

In *In re Trust Under Will of Jacobs*, 91 N.C. App. 138, 370 S.E.2d 860 (1988), this Court emphasized that "[g]eneral common law principles hold that a trustee's breach of trust subjects him to *personal liability.*" *Id.* at 145, 370 S.E.2d at 865 (emphasis added). Finding the assessment of costs, including attorney's fees assessable to a fiduciary, both as a matter of then-existing statutory law and as a matter of common law in North Carolina, we stated in *Jacobs* that "damages for breach of trust are designed to restore the trust to the same position it would have been in had no breach occurred[,]" and therefore, "the court may fashion its order to fit the nature and gravity of the breach and the consequences to the beneficiaries and trustee." *Id.* at 146, 370 S.E.2d at 865. Accordingly, in *Jacobs*, this Court held that the "court's order mandating payment of costs, witness fees, and *attorney's fees* was a proper assessment of damages" against the trustee in

his individual capacity. *Id.* (emphasis added). This holding is binding precedent because the issue of a trustee's personal liability for costs, including attorney's fees, was specifically raised on appeal.

In the present case, the trial court made the following pertinent finding of fact:

> 16. The attorneys' fees incurred by the Petitioner *were necessitated due to the vexatious refusal of the Respondent to provide an accounting to the [Petitioner] or the minor as to the use of the custodial funds.* The Respondent *intentionally*, consistently throughout his tenure as custodia[n] *withheld information pertaining to the custodial property*, and informed the mother of the minor that, "My father gave that money to the children, and I can do with it what I want." ***Such conduct is egregious** and cannot be allowed to continue.* In addition, the Respondent kept no records whatsoever of the numerous transactions involving custodial property from the time he began serving as custodian. Instead, the only records were those maintained by Smith Barney and other financial institutions that were kept in the ordinary course of business by those institutions, and those records do not contain any information as to why or for what the expenditures were made. *The Respondent has failed miserably in meeting the requirements that he keep records of all transactions with respect to custodial property*, and until this proceeding was filed and until testimony in open court was almost concluded the Respondent withheld much of such information from the Petitioner. In order to represent the Petitioner in this matter it was necessary for her attorneys to expend numerous, laborious, tedious and painstaking discovery, including taking several depositions of the Respondent, to uncover the nature and extent of the misuse of custodial funds – all of which was *due to the recalcitrance of the Respondent in accounting for the use of custodial funds* as detailed above. The Respondent should be required to reimburse the Petitioner for her attorney's fees and expenses incurred in this proceeding. The court finds, based upon the affidavits of Petitioner's attorneys, and upon the sworn testimony of Elizabeth T. Hodges, Esq. in open court, that the legal services rendered were reasonable and necessary, and that the Petitioner's attorneys are entitled to payment for their fees and expenses from the Respondent in the sum of $138,531.85.

(Emphasis added.)

The trial court's finding of fact indicates that respondent undoubtedly would have been personally liable for the attorney's fees at issue, were this an ordinary breach of trust action. We recognize that in most instances, an award of attorney's fees in a breach of trust action or in an action for a breach of fiduciary duty under UTMA will not be taxable personally to the trustee or custodian simply for having made certain improper disbursements in violation of statutory requirements. Nonetheless, where the conduct of the trustee or custodian is egregious and warrants removal, as found by the trial court in the present case, we believe our case law and statutory authority clearly allow for the taxing of attorney's fees and costs against the trustee or custodian in a personal capacity.

Thus, we hold there exists statutory authority in this state to tax attorney's fees against respondent in a personal capacity as a result of his egregious conduct in breaching his fiduciary duties as a custodian under UTMA. Such holding comports with the greater weight of authority from other jurisdictions that have addressed this same issue. As petitioner points out, were we to construe these statutes differently, the resulting inequity to a minor beneficiary of an UTMA custodial account would be contrary to the legislative intent of that statute, to preserve the minor's property, and our UTMA statute would be reduced to a "hollow act," leaving little by way of repercussion against a custodian who engages in malfeasance contrary to his statutory duties.

### B. Reasonableness

Respondent next argues that, even if the trial court had the authority to award attorney's fees to petitioner, the trial court's award in this case is erroneous because it is unreasonable. Respondent maintains only that the trial court awarded attorney's fees in an amount greater than the value of the claim presented, and this amount is unreasonable as a matter of law. Respondent does not challenge the sufficiency of the trial court's findings of fact on this issue, nor does respondent specify which, if any, of the particular charges submitted by petitioner's attorneys in an affidavit to the trial court are unreasonable.

> The allowance of attorney fees is in the discretion of the presiding judge, and may be reversed only for abuse of discretion. Accordingly, to overturn the trial court's decision, it must be shown that it is so arbitrary that it could not have been the result of a reasoned decision, or is manifestly unsupported by reason.

*Furmick v. Miner,* 154 N.C. App. 460, 462, 573 S.E.2d 172, 174 (2002) (internal quotation marks and citations omitted). "In order to demonstrate an abuse of discretion, the party challenging an award of attorney's fees must show that the trial court's ruling was manifestly unsupported by reason, or could not be the product of a reasoned decision." *In re Clark,* 202 N.C. App. 151, 168, 688 S.E.2d 484, 494 (2010) (internal quotation marks and citations omitted).

> If the trial court determines that an award of attorney's fees is proper, it must also make factual findings concerning time and labor expended, the skill required, the customary fee for similar work, and the experience or ability of the attorney based on competent evidence. However, the trial court is not required to make detailed findings of fact for each factor.

*Furmick,* 154 N.C. App. at 462-63, 573 S.E.2d at 175 (citations omitted); *see also Williams v. New Hope Found., Inc.,* 192 N.C. App. 528, 530, 665 S.E.2d 586, 588 (2008) ("Before awarding attorney's fees, the trial court must make specific findings of fact concerning: (1) the lawyer's skill; (2) the lawyer's hourly rate; and (3) the nature and scope of the legal services rendered.").

Respondent's sole argument regarding the unreasonableness of the amount of attorney's fees awarded is that an award of attorney's fees cannot, as a matter of law, be greater than fifteen percent of the claim. Respondent relies on the case of *West End III Partners v. Lamb,* 102 N.C. App. 458, 402 S.E.2d 472 (1991), in support of his contention. However, the facts of *Lamb* involved the collection of an outstanding debt under a promissory note that also allowed for an award of attorney's fees "not exceeding a sum equal to fifteen percent (15%) of the outstanding balance." *Id.* at 459, 402 S.E.2d at 473 (internal quotation marks omitted). In *Lamb,* the trial court awarded an amount of attorney's fees to the defendants representing fifteen percent of the balance due on the outstanding debt prior to its payment by the plaintiffs pursuant to N.C. Gen. Stat. § 6-21.2(1), which, like the promissory note at issue in that case, allows for an award of attorney's fees not to exceed fifteen percent of the outstanding balance of a debt collected by or through an attorney after the debt's maturity. *Lamb,* 102 N.C. App. at 459-60, 402 S.E.2d at 474; N.C. Gen. Stat. § 6-21.2(1), (2) (2011). On appeal in *Lamb,* this Court held that although the statute at issue allowed for an award of attorney's fees up to fifteen percent, the trial court still must make a determination of what percentage in that allowable range is reasonable. *Lamb,* 102

N.C. App. at 460-61, 402 S.E.2d at 474. We then remanded the case for the trial court to make findings of fact as to the actual hours expended collecting the outstanding debt and the reasonable value of those services, as we could not determine from the record whether the fifteen percent fee was in fact a reasonable fee under the facts of that case. *Id.* at 461, 402 S.E.2d at 475. The present case involves neither the collection of an outstanding debt on a note nor the application of the provisions, including the fifteen percent cap, of N.C. Gen. Stat. § 6-21.2. Respondent's reliance on *Lamb* is entirely misplaced and respondent's argument on this issue is without merit.

We note that, ordinarily, we would be inclined to remand this issue to the trial court for the entry of additional and more detailed findings of fact regarding petitioner's attorney's skill, hourly rate, and the nature and scope of the legal services rendered, as required under our case law. However, respondent has not challenged the inadequacy of the trial court's findings of fact on appeal, and we decline to remand an issue not raised by the appellant on appeal. *First Charter Bank v. Am. Children's Home*, 203 N.C. App. 574, 580, 692 S.E.2d 457, 463 (2010) (" 'It is not the role of the appellate courts . . . to create an appeal for an appellant[.]' " (quoting *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005)).

Moreover, a close reading of the transcript and the record in this case reveals that petitioner's attorney submitted an affidavit to the trial court indicating her expertise as well as the hourly rates charged by her and her associates, partners, and paralegals. In addition, petitioner's attorney testified at the hearing as to her hourly rates, her experience and expertise in the area of family law, the fact that her hourly rates were commensurate with other attorneys of similar education and experience, and the nature and scope of services performed in this case. Further, petitioner's attorney was cross-examined regarding multiple pages of time sheets reflecting each individual task performed by all attorneys involved and the time denoted for each individual task. These time sheets were submitted as an exhibit to the trial court at the evidentiary hearing. These time sheets, in addition to petitioner's attorney's testimony, reveal the length of time expended by the attorneys in obtaining discovery documents, conducting depositions, and attending hearings. Thus, the record contains ample competent evidence supporting the trial court's conclusion that the amount of attorney's fees awarded in this case was reasonable. We therefore affirm the trial court's award of attorney's fees to petitioner.

## VI.  Breach of Fiduciary Duty

**[4]** In his fifth argument on appeal, respondent contends the trial court erred in finding and concluding that a certain transaction was a speculative investment inappropriate for him to make as custodian for Suzanne and that his making of the investment constituted a breach of his fiduciary duty.

In finding of fact number 12(b), the trial court addressed two checks made payable to "Piedmont Ventures" in the total amount of $51,868.92. The trial court found as fact that "Piedmont Ventures is a venture capital fund, and was a highly speculative, risky investment inappropriate for the Respondent to make as custodian for the minor." Respondent contends this finding of fact is actually a conclusion of law, that it is not supported by any other findings of fact as to the speculative nature of the Piedmont Ventures investment, and that there is no competent evidence to support a finding that the investment was speculative or inappropriate. Respondent contends the evidence showed he followed the "prudent investor" standard and that the Piedmont Ventures investment was a small percentage of the account corpus and never had a negative impact on the account funds.

N.C. Gen. Stat. § 33A-12(b) (2011) specifies the standard of care applicable to a custodian under UTMA: "In dealing with custodial property, a custodian shall observe the standard of care that would be observed by a *prudent person dealing with property of another* and is not limited by any other statute restricting investments by fiduciaries." *Id.* (emphasis added). This section "*restates* and makes somewhat stricter the *prudent man fiduciary standard for the custodian*[.]" Unif. Transfers to Minors Act § 12, Comment, 8C U.L.A. 50 (2001) (emphasis added). Thus, despite respondent's reference to the "prudent investor" rule, which is explicitly adopted under our Uniform Trust Code, N.C. Gen. Stat. § 36C-9-901 (2011), Chapter 33A explicitly adopts a different standard, a stricter variation of the "prudent person" or "prudent man" rule, for UTMA accounts. *Compare* Unif. Transfers to Minors Act § 12, Comment, 8C U.L.A. 50 (2001) (noting section 12(b) of the UTMA statute "*restates* and makes somewhat stricter the *prudent man fiduciary standard for the custodian*" (emphasis added)), *with* N.C. Gen. Stat. § 36C-9-901(a) (establishing that "a trustee who invests and manages trust assets owes a duty to the beneficiaries of the trust to comply with the *prudent investor rule*" (emphasis added)). Moreover, in his reply brief, respondent expressly acknowledges that "the prudent person stan-

dard" is "the appropriate standard of care" in this action under UTMA.

The original variation of the prudent person rule is stated in Restatement (Second) of Trusts § 174 (1959) as a duty "to exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property[.]" Nonetheless, in making investments of trust funds, the trustee is under a duty "to make such investments and only such investments as a prudent man would make of his own property having in view *the preservation of the estate* and the amount and regularity of the income to be derived[.]" Restatement (Second) of Trusts § 227(a) (1959) (emphasis added). Accordingly, "a trustee is not generally authorized to make or retain trust investments that are speculative, even where they are of such promise and character that a prudent person might make them for himself." 76 Am. Jur. 2d *Trusts* § 483 (2005).

This rule against speculation is consistent with the stricter prudent person standard set forth under the UTMA statute, under which the "overriding goal . . . is to preserve the property of the minor." *Buder*, 774 P.2d at 1387. Thus, under the applicable prudent person rule, an UTMA custodian "is forbidden" from "invest[ing] [even] a small portion of [the custodial funds] speculatively[,]" which includes "[i]nvestment in new enterprises." Paul G. Haskell, *The Prudent Person Rule for Trustee Investment and Modern Portfolio Theory*, 69 N.C. L. Rev. 87, 92-93 (1990). "Under the prudent person rule, any speculative investment is a breach of trust." *Id.* at 94. Furthermore,

> [t]he standard of prudence is applied to each investment in isolation. Each investment is either in compliance or it is not, without regard to its relationship to other investments in the portfolio. The trustee is liable for loss in value of any improper investment, without regard to the performance of any other investment, proper or improper, or to the performance of the portfolio as a whole.

*Id.* at 93.

In *Carlson v. Wells*, 705 S.E.2d 101 (Va. 2011), the Supreme Court of Virginia discussed at length the prudent person standard of care as specifically applied to UTMA custodians. Consistent with the foregoing principles, the Court stated that "[t]he conduct of fiduciaries held to the Prudent Person Rule is evaluated with respect to each individual investment. The performance of an investment portfolio as a whole is not considered." *Id.* at 106. "By contrast, the Prudent Investor

Rule permits fiduciaries to engage in reasonable speculation to bene-fit from the higher returns of modestly riskier investments, while con-comitantly shifting the focus of evaluating the fiduciary's conduct from the performance of individual investments to the portfolio as a whole." *Id.* In *Carlson*, the Court noted the General Assembly amended Virginia's UTMA statute in 2007 to incorporate the prudent investor rule. *Id.* at 107; *see* Va. Code Ann. § 31-48(B) (2011) ("In deal-ing with custodial property, a custodian shall observe the standard of care set forth in the Uniform Prudent Investor Act[.]"). However, North Carolina's UTMA statute expressly retains the prudent person rule and has not applied the prudent investor standard to custodial accounts under UTMA. *See* N.C. Gen. Stat. § 33A-12(b); N.C. Gen. Stat. § 36C-9-901(d)(1)(d).

We first note the trial court's finding of fact that the Piedmont Ventures investment was highly speculative and risky is indeed a find-ing of fact, not a conclusion of law. "As a general rule, . . . any deter-mination requiring the exercise of judgment or the application of legal principles is more properly classified a conclusion of law. Any determination reached through logical reasoning from the eviden-tiary facts is more properly classified a finding of fact." *Sheffer v. Rardin*, _____ N.C. App. _____, _____, 704 S.E.2d 32, 35 (2010) (internal quotation marks and citations omitted). Here, the classifica-tion of the investment at issue is clearly a finding of fact, deduced from the evidence presented regarding the nature of the investment.

There is ample evidence in the record, including testimony by respondent himself, referring to Piedmont Ventures as a "venture capital fund" that invested in "[s]tart-up companies." Richard Alexander provided further testimony regarding the Piedmont Ventures investment, stating expressly that such investment was a "risky investment." In addition, Peter Bell ("Bell"), a certified public accountant, testified as an expert that the Piedmont Ventures venture capital fund "would not be a prudent investment if it were a signifi-cant part. It would have to be a relatively immaterial part of the over-all portfolio." Bell testified that "[f]or that type of risk, . . . given the fiduciary responsibilities, you certainly wouldn't risk more than a couple of percentages, *at most*, of the overall portfolio, one or two percent." (Emphasis added.) Respondent, in his brief, admits that the Piedmont Ventures investment "was never more than 2.5% of the total corpus value of the UTMA assets[,]" which is notably more than that considered prudent according to the expert testimony. Thus, the trial court's finding of fact that the Piedmont Ventures investment was

highly risky and speculative and inappropriate for Suzanne's UTMA funds is supported by competent evidence and supports the trial court's conclusion of law that such disbursement was in violation of his fiduciary duty under UTMA.

### VII.  Wrongful Disbursements Under UTMA

**[5]** In his final argument on appeal, respondent challenges almost all findings of fact regarding the disbursements he made from Suzanne's UTMA account. Respondent groups these disbursements into three categories and appears to argue the trial court erred in finding and concluding these disbursements were wrongful and not in Suzanne's best interests.

It is the duty of the custodian to

> *keep records of all transactions with respect to custodial property*, including information necessary for the preparation of the minor's tax returns, and shall make them available for inspection at reasonable intervals by a parent or legal repre-sentative of the minor, or by the minor if the minor has attained the age of 14 years.

N.C. Gen. Stat. § 33A-12(e) (emphasis added). Thus, here it was the duty of respondent to present the trial court with proper records denoting the propriety of each challenged expenditure. *Carlson*, 705 S.E.2d at 107. Upon a careful review of the record, and of each chal-lenged disbursement found by the trial court, we find competent evidence in the record to support the trial court's findings and conclusions that each disbursement was inappropriate. Most notably, for a large portion of the transactions, respondent was unable to properly account for the disbursement of the funds, in violation of his duty under section 33A-12(e) of UTMA. Further, respondent has failed to show how the trial court's findings of fact were not sup-ported by any competent evidence produced at the hearing. We find respondent's wholesale attack on each and every finding of fact by the trial court to be without merit.

### VIII.  Petitioner's Motion to Dismiss For Violation of Appellate Rules

**[6]** Petitioner has filed a motion to dismiss respondent's appeal or, in the alternative, to strike respondent's brief before this Court, citing multiple violations by respondent of the rules of appellate procedure. We recognize that respondent has, in fact, violated certain of our appellate rules, some of which have been denoted throughout the foregoing opinion. Respondent's brief is considerably lacking in

authority for his arguments, and we note that in some instances, respondent's arguments adopted an emotional tone and resorted to unprofessional personal attacks against petitioner and the trial court. While we are cognizant of these transgressions, we nonetheless chose to address the merits of respondent's issues where possible, in light of our Supreme Court's opinion in *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 657 S.E.2d 361 (2008). Accordingly, we deny petitioner's requests.

## IX.  Conclusion

We hold the trial court's award of interest, representing the loss of appreciation of the funds wrongfully disbursed, was proper as an element of damages in the present action for an accounting and removal of respondent as custodian under North Carolina's UTMA statute. We also hold that, because the legislative history of the uniform UTMA statute adopted in full by our Legislature indicates that custodial accounts under UTMA are to be regarded as a form of statutory trust, there exists statutory authority under N.C. Gen. Stat. § 6-21(2) for an award of attorney's fees in an action for the removal of a custodian and for an accounting and determination of personal liability under UTMA. An award of interest and attorney's fees in UTMA actions has likewise been affirmed by the majority of other jurisdictions that have addressed these same issues.

In addition, where the trial court finds the custodian's conduct in managing the custodial property has been egregious, thereby warranting removal, we hold an award of attorney's fees may be taxed against the custodian personally, as the trial court properly did in the present case. Although the trial court must ordinarily enter detailed findings of fact regarding the attorney's skill and hourly rate, the time and labor expended, and the scope and nature of tasks performed when making a determination of a reasonable attorney's fees award, we nonetheless hold the record contains sufficient evidence to support the trial court's conclusion that the amount of attorney's fees awarded to petitioner in this case was reasonable.

We further hold that the record contains sufficient evidence to support all of the trial court's findings of fact regarding the inappropriateness of the disbursements made by respondent, particularly the speculative nature of the Piedmont Ventures investment, in violation of the prudent person fiduciary standard imposed on custodians under UTMA.

Finally, we deem respondent's arguments as to his affirmative defenses abandoned, as respondent failed completely in his duty to follow the appellate rules and provide a coherent argument containing legal authority in support of that argument. While we recognize respondent's appellate rules violations, we nonetheless deny petitioner's motions to dismiss respondent's appeal and to strike respondent's brief, in light of this opinion.

The trial court's judgment and order amending that judgment is thereby affirmed.

Affirmed.

Judges STEELMAN and HUNTER, JR. (Robert N.) concur.